STATE OF WEST VIRGINIA

*v.*

ERIC MARK GOFF

(No. 14814)

Decided March 26, 1982.

*Burk, Bayley & Salsbery and H. F. Salsbery, Jr.,* for appellee.

*Chauncey H. Browning,* Attorney General, and *Howard E. Krauskopf,* Assistant Attorney General, for appellant.

MILLER, CHIEF JUSTICE:

The only issue we address in this criminal appeal is whether the trial court was correct in permitting the State to impeach the defendant with his own prior oral inculpatory statement. The statement had been found at an *in camera* hearing to be "involuntary." The defendant testified on the stand that he had no prior knowledge that two of the passengers in the car which he was driving were going to rob the store when they stopped to buy cigarettes. The State attempted to impeach this assertion by calling to the stand a police officer who testified that the defendant had made an oral statement after being taken into custody that he knew the two were going to "take down" the store.

The State relies on several United States Supreme Court cases where the practice of allowing the defendant to be cross-examined on a prior inconsistent statement was sanctioned even though the statement was not admissible in the State's case in chief. *E.g.*, *Oregon v. Haas*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). We have accepted this principle in Syllabus Point 4 of *State v. Goodmon*, ___ W. Va. ___, 290 S.E.2d 260 (1981):

> "Where a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement [knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief]."[1]

---

[1] The bracketed portion of *Goodmon's* Syllabus Point 4 is a procedural statement since the involuntariness of the confession will have been determined at an *in camera* hearing and the defendant and his counsel will have had prior knowledge of its involuntariness.

*See also* Syllabus Point 2, *State v. Vance,* ____ W. Va. ____, 285 S.E.2d 437 (1981).

In *Goodmon,* we found that a statement rendered involuntary because the defendant had previously asked for counsel and his request had been denied could be used for purposes of cross-examination of the defendant. Much the same fact situation was presented in *Vance, supra.*

The defendant asserts that the rule in *Harris* barring the use of an involuntary statement in the State's case in chief but permitting it for impeachment purposes is not applicable to this case. He contends that if his statement is involuntary in the sense it was not product of a free will then it cannot be used for any purpose. For this point, defendant relies on two cases decided after *Harris, supra,* where the Supreme Court has found a confession to be not only involuntary but also coerced and, therefore, not usable even for the limited purpose of impeachment of the defendant.

In *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), police interrogated a badly wounded defendant in the intensive care unit of a hospital. The defendant was in severe pain and tubes were inserted in his mouth and bladder for medical purposes. The interrogation lasted over a four-hour period. It was broken only when the defendant needed additional medication or when the defendant lost consciousness. In some instances, the defendant's answers appeared confused. There was no disagreement that he asked for a lawyer on several occasions. The Court concluded that the interrogation was coerced stating:

> "But 'the blood of the accused is not the only hallmark of an unconstitutional inquisition.' Blackburn v. Alabama, 361 U.S. [199] at 206, 4 L. Ed. 2d 242 [at 247], 80 S Ct 274 [at 279 (1960)]. Determination of whether a statement is involuntary 'requires more than a mere color-matching of cases.' Reck v. Pate, 367 U.S. 433, 442, 6 L. Ed. 2d 948 [954], 81 S. Ct. 1541 [1547 (1961)]. It requires careful evaluation of all the circumstances of the interrogation.

"It is apparent from the record in this case that Mincey's statements were not 'the product of his free and rational choice.' Greenwald v. Wisconsin, 390 U.S. 519, 521, 20 L. Ed. 2d 77 [80], 88 S. Ct. 1152 [1154 (1968)]." 437 U.S. at 401, 98 S.Ct. at 2418, 57 L.Ed.2d at 306. (Footnote omitted)

In *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), the Supreme Court held that where a defendant had been compelled to give testimony before a grand jury, such testimony could not be used to impeach him at his later criminal trial because it was coerced. The testimony was coerced in the sense that the defendant was subject to penalties by way of comtempt if he did not answer.[2]

In the present case, the trial court found that the defendant had been given warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but also found his confession to be involuntary. The defendant had a reduced IQ of 66 and could not read or write. Defendant's low IQ caused the trial judge to be concerned over whether the defendant fully understood his *Miranda* rights. *State v. Hamrick,* ___ W. Va. ___, 236 S.E.2d 247 (1977). The defendant could sign his name. There was no dispute that he did sign a form waiver of his *Miranda* rights. There was a question however whether the defendant had been initially informed that he was a suspect in an armed robbery. Another problem in the trial judge's mind was that the defendant had a past relationship with the police as a part-time informant. It appeared to the trial judge that the defendant came to the police

---

[2] The relevant passage from *New Jersey v. Portash* is:

"Testimony given in response to a grant of legislative immunity is the essence of coerced testimony. In such cases there is no question whether physical or psychological pressures overrode the defendant's will; the witness is told to talk or face the government's coercive sanctions, notably, a conviction for contempt. The information given in response to a grant of immunity may well be more reliable than information beaten from a helpless defendant, but it is no less compelled. The Fifth and Fourteenth Amendments provide a privilege against *compelled* self-incrimination, not merely against unreliable self-incrimination." 440 U.S. at 459, 99 S.Ct. at 1297, 559 L.Ed.2d at 510.

station under the impression that he was being asked to assist in solving another crime to which he was not connected.

Part of the confusion in this area arises from the fact that courts often use the term "involuntary" in regard to a defendant's confession without noting that since *Harris* the term has two levels of meaning. As a result of *Miranda v. Arizona, supra,* prior to any custodial interrogation the defendant must be given and waive his *Miranda* rights (basically his right to remain silent and his right to have counsel).[3] If such waiver is not obtained, his statement is "involuntary" in the sense that it did not comply with *Miranda* and cannot be used in the State's case in chief. It is this type of involuntariness that is involved in *Harris.*

On a second level, a confession may be found "involuntary" in the sense it was a product of either mental or physical coercion. This coercion renders the statement untrustworthy or compelled and, therefore, it cannot be used for any purpose in the trial of a case. This is pointed out by *Mincey, supra,* and *Portash, supra.*[4] Even prior to *Miranda,* it was universally recognized that a coerced confession was inadmissible. *E.g., Rogers v. Richmond,* 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *State v. Persinger,* ___ W. Va. ___, 286 S.E.2d 261 (1982); *State v. Zaccario,* 100 W. Va. 36, 129 S.E. 763 (1925).

The problem in the present case is to determine the contours of the *Harris* exception to *Miranda.* The simplest

---

[3] The text of *Miranda* on this point is:

"He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation." 384 U.S. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

[4] The two meanings of involuntariness are thoroughly developed in *Kidd v. State,* 33 Md. App. 445, 366 A.2d 761 (1977). *See also* Grano, *Voluntariness, Free Will, And The Law of Confessions,* 65 Va. L. Rev. 859 (1979).

situation is where the confession is otherwise valid but there has been failure to comply with the requirements of *Miranda* in regard to advising and obtaining a waiver of the defendant's rights to remain silent and to consult with an attorney prior to interrogation and to decline further interrogation once it is initiated. This is the traditional area where *Harris* comes into play as evidenced by our cases of *Goodmon, supra,* and *Vance, supra.* These cases permit the use of a confession for cross-examination of the defendant even though it cannot be used as a part of the State's case in chief.[5]

On the other hand where there has been direct physical or mental coercion (or compulsion) on a defendant as reflected by *Mincey, supra,* and *Portash, supra,* then the confession or inculpatory statement is involuntary in fact and cannot be used for any purpose.

These two categories are not all encompassing because the validity of a confession is determined by a wide range of factors that historically have been embraced by the phrases "upon the particular facts and circumstances surrounding that case" or "the totality of the circumstances." *Edwards v. Arizona,* 451 U.S. 477, 481-84 101 S.Ct. 1880, 1883-84, 68 L.Ed.2d 378, 385 (1981); *State v. Persinger, supra.*

We are not cited nor have we found a case with a similar fact pattern where a court considered a confession found to be involuntary under these circumstances usable on cross-examination under the *Harris* exception. There are a number of cases where the defendant's reduced mental capacity has weighed heavily against the valid use of the confession. *E.g., Sims v. Georgia,* 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); *Clewis v. Texas,* 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); *Henry v. Dees,* 658 F.2d

---

[5] The underlying premise for the impeachment rule is stated in *Oregon v. Haas, supra:*

"Here, too, the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." 420 U.S. at 722, 95 S.Ct. at 1221, 43 L.Ed.2d at 577-78.

406 (5th Cir. 1981); *Moore v. Ballone,* 658 F.2d 218 (4th Cir. 1981); *Cooper v. Griffin,* 455 F.2d 1142 (5th Cir. 1972);[6] *Toliver v. Gathright,* 501 F.Supp. 148 (E.D. Va. 1980); *Hines v. State,* 384 So.2d 1171 (Ala. Crim. App. 1980).

These cases recognize that an impaired mental condition makes a defendant more susceptible to manipulation, influence or coercion. We emphasized this point in *State v. Hamrick supra,* and have recently reaffirmed it in *State v. Boyd,* ___ W. Va. ___, 280 S.E.2d 669, 682 (1981). In addition to the markedly reduced IQ, the trial court was concerned that the defendant may have been brought in for questioning on the pretext[7] of his past role as a police informer and was not advised that he was a suspect in an armed robbery.[8] While each of these circumstances may not standing alone vitiate a confession, they are factors bearing on the totality of the circumstances. Finally, we attach some significance to the fact that in a second statement given by the defendant and which was written

---

[6] In *Cooper,* the defendant had a verbal IQ of 67, a performance IQ of 68 and a full scale IQ of 64. Reading comprehension was not above a second or third grade level.

[7] We find a few cases which consider police deception as a factor in determining voluntariness. *State v. Denny,* 27 Ariz. App. 354, 555 P.2d 111 (1976); *People v. Disbrow,* 16 Cal. 3d 101, 127 Cal. Rptr. 360, 545 P.2d 272 (1976); Annot., 99 A.L.R.2d 774 (1965).

[8] Some courts have indicated that in determining whether there has been a voluntary waiver of *Miranda* rights under the totality rule one factor may be whether the defendant was ever advised initially of the nature of the charge against him. *E.g., Carter v. Garrison,* 656 F.2d 68, 70 (4th Cir. 1981); *United States v. McCrary,* 643 F.2d 323, 328 (5th Cir. 1981); *Collins v. Brierly,* 492 F.2d 735, 739 (3rd Cir. 1974), *cert. denied,* 419 U.S. 877, 95 S.Ct. 14 42 L.Ed.2d 116, (1974); *Schenk v. Ellsworth,* 293 F.Supp. 26, 29 (D. Mont. 1968). Other courts have reached an opposite conclusion that there is no necessity of informing the defendant of the nature of the charge prior to giving the *Miranda* warnings. *E.g., United States v. Anderson,* 533 F.2d 1210 (D.C. Cir. 1976); *United States v. Campbell,* 431 F.2d 97 (9th Cir. 1970); *State v. Allen,* 111 Ariz. 546, 535 P.2d 3 (1975); *James v. State,* 230 Ga. 29, 195 S.E.2d 448 (1973); *State v. Carter,* 296 N.C. 344, 250 S.E.2d 263 (1979). We believe that some information should be given to the defendant as to the nature of the charge in order that he can determine whether to intelligently and voluntarily exercise or waive his *Miranda* rights.

by the interrogating officer the defendant denied knowing in advance that his companions were going to rob the store when they went into it to get cigarettes.[9]

We believe that the *Harris* exception does not apply to the case at hand. A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial.

For this reason, the trial court erred in permitting the impeachment of the defendant. We, therefore, reverse the case and remand it for a new trial.

*Reversed and Remanded.*

---

[9] The record suggests that the defendant first made two oral statements. Then another officer sometime later wrote out a statement which the defendant signed. The record does not disclose why the oral inculpatory statement—stating that the defendant knew his passengers were going to "take down" the store—was not included in the written statement. We recognized in *State v. Laws*, ___ W. Va. ___, 251 S.E.2d 769 (1978), that whether the accused repudiates an extrajudicial statement at a later date is also a factor to be considered in the totality of the circumstances test.