357 S.E.2d 34

**STATE of West Virginia**

v.

**Scott McDONOUGH.**

No. 17002.

Supreme Court of Appeals of
West Virginia.

March 11, 1987.

Rehearing Denied June 3, 1987.

Judith A. Jones, Public Defender, Martinsburg, for appellant.

Bethany R. Boyd, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

Scott McDonough appeals from a final order of the Circuit Court of Jefferson County, dated March 19, 1985, which adjudged him guilty, after a jury verdict, of the crime of grand larceny, a felony. The appellant contends that the trial court erred in allowing the State to introduce into evidence an inculpatory statement taken from him while he was in police custody. We disagree, and affirm the trial court's judgment.

At approximately 1:30 a.m. on June 25, 1984, Deputy Russell Shackelford, Trooper R.M. Brewster and Trooper K.S. Smith arrived at the appellant's home to investigate a report of a breaking and entering. The appellant met the officers in front of the house and informed them that he had returned home at approximately 1:00 a.m. to discover the front door knocked down and several items, including a gun, missing. After obtaining the appellant's permission to search the premises, Deputy Shackelford and Trooper Smith entered the house with the appellant, while Trooper Brewster searched the grounds.

After surveying the disarray in the interior of the house, Trooper Smith left the appellant and Deputy Shackelford to assist Trooper Brewster. Shortly thereafter, Trooper Smith noticed that someone had attempted unsuccessfully to obliterate the serial number on a motorcycle he found leaning against an outbuilding. Trooper Smith made a computer check of the serial number and discovered that the motorcycle and a bicycle he found nearby had been stolen several days before.

Trooper Smith then questioned the appellant, who stated that his brother and brother-in-law had brought the motorcycle and bicycle to his house. Based on this statement and those obtained from the appel-

lant's brother-in-law and landlord, who were present during the search, the officers took the appellant from his home at approximately 2:20 a.m. and transported him to the Jefferson County jail. Initially, the appellant and all three officers rode in the same patrol car; Trooper Brewster and Trooper Smith sat in the front seat, while Deputy Shackelford sat in the back seat with the appellant. On the way to the jail, the officers stopped at the state police barracks and Trooper Smith switched to another patrol car. Trooper Brewster drove the appellant and Deputy Shackelford the remainder of the way to the jail, with Trooper Smith following. Both cars arrived at the jail at approximately 2:50 a.m.

Once at the jail, Trooper Brewster began filling out an affidavit needed to obtain a warrant for the appellant's arrest on the felony charge, while Trooper Smith and Deputy Shackelford took the appellant into a secretary's office. Trooper Smith advised the appellant of his *Miranda* rights and the appellant signed a form waiving those rights at 2:55 a.m. The officers then questioned the appellant and he gave a statement at 3:05 a.m. implicating himself in the theft of the cycles. The two page statement was dictated by the appellant to Trooper Smith, who wrote it down in longhand.

The appellant was subsequently indicted for grand larceny. On March 11, 1985, the trial court held a suppression hearing upon the appellant's motion to exclude the inculpatory statement. The appellant, who is able to read and write only his name, testified that he signed the first page of the statement after Trooper Smith read it back to him, but refused to sign the second page. The appellant moved for suppression of both pages of the statement on the grounds that (1) he was not fully informed of the reason for the investigation before he waived his *Miranda* rights;[1] (2) the statement was not voluntarily given; and (3) the statement was not admitted by him to be correct.

---

1. Deputy Shackelford had been looking for the appellant the day before to serve a warrant for his arrest on a battery charge. The appellant contends that the officers placed him under arrest on the battery warrant, but did not inform him of· the nature of the felony charge.

After considering these issues at the *in camera* suppression hearing, the trial court ruled that the first page of the appellant's statement was admissible, but that the second page should be suppressed. Additional evidence introduced at trial included the testimony of Troopers Brewster and Smith, the testimony of the owner of the stolen cycles, and the testimony of the appellant's landlord. The appellant presented no evidence in his defense. After being instructed on the voluntariness issue, *see* Syl. Pts. 4 and 5, *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978), the jury returned a verdict finding the appellant guilty of grand larceny and the trial court entered a judgment reflecting that verdict. By an order dated March 28, 1985, the trial court denied the appellant's motions to set aside the guilty verdict and for a new trial, finding, in part, that the second page of the statement had been properly suppressed, but that the State had shown the voluntariness of the first page of the appellant's statement by a preponderance of the evidence.

■ It is well-settled that a defendant must be informed of and intelligently waive his *Miranda* rights before any custodial interrogation begins. *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). The burden, in a criminal case, is on the State to prove, at least by a preponderance of the evidence, that the *Miranda* rights have been given and waived. Syl. Pt. 2, *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980). One factor this Court looks to in determining if a defendant has intelligently and voluntarily waived his *Miranda* rights is whether the defendant was initially advised of the nature of the charge against him. *State v. Goff,* 169 W.Va. 778, 289 S.E.2d 473 (1982). In *Goff,* we stated our belief "that some information should be given to the defendant as to the nature of the charge in order

that he can determine whether to intelligently and voluntarily exercise or waive his *Miranda* rights." *Id.* 169 W.Va. at 784, n. 8, 289 S.E.2d at 477, n. 8. While the United States Supreme Court has since held that a suspect need not be informed of all possible charges before effectively waiving his *Miranda* rights under the federal constitution, *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), we find independent authority to protect a person's right to not incriminate himself in article three, section five of the Constitution of West Virginia, and reiterate the concern we expressed in *Goff.*

The defendant in *Goff* signed a form waiver of his *Miranda* rights; however, he was not initially advised of the charge against him and it was not clear that he understood that he was a suspect. *Goff,* at 169 W.Va. at 781–84, 289 S.E.2d at 476–77. The appellant argues that similar facts are present in the instant case. He contends that when he waived his *Miranda* rights he was informed of his arrest on the battery charge, but was not informed of the grand larceny charge. Therefore, he contends that he lacked sufficient information to effectively waive his *Miranda* rights.

■ The totality of the circumstances in this case, however, shows that the appellant was so informed, and that he intelligently and voluntarily waived his *Miranda* rights. The officers questioned the appellant about the cycles before bringing him to the jail, and the appellant's testimony at the suppression hearing reveals that he was told by the officers of the nature of the offense under investigation.[2] Additionally, the appellant had had previous dealings with law enforcement officers, and had been given and waived his *Miranda* rights on other occasions. On this occasion, Trooper Smith testified that he read each line of the waiver of rights form to the appellant, and paused after reading

---

2. The appellant responded as follows to questions from his counsel on direct examination concerning the information provided to him by the officers.

Q. Scott, when you were in the back room of the jail and Deputy Shackelford was with you, what were you under arrest for at that time?

A. Smacking a juvenile, battery warrant.

Q. Were you told that you were under arrest on a felony warrant?

A. No, ma'am. The law just said that they was going to have me arrested for a felony for the motorcycle being on my property.

each line to ask whether the appellant understood those rights. The appellant responded affirmatively and signed the waiver form after having placed his initials next to each line. Trooper Smith then asked the appellant to tell him what happened. The appellant responded by giving the inculpatory statement which he now attacks. Based on the foregoing, we find that the State has met its burden of proving that the appellant was informed of and intelligently and voluntarily waived his *Miranda* rights.

We next turn to the appellant's contentions that the inculpatory statement was not voluntarily given by him and was not admitted by him to be correct. In Syllabus Point 2 of *State v. Nicholson,* 174 W.Va. 573, 328 S.E.2d 180 (1985), this Court adopted the following rule concerning the admissibility of a statement in another's handwriting: "A confession or statement made by a suspect is admissible if it is freely and voluntarily made despite the fact that it is written by an arresting officer if the confession or statement is read, translated (if necessary), signed by the accused and admitted by him to be correct."

The appellant asserts that his statement was involuntary for two reasons. First, he contends that Deputy Shackelford coerced the statement by offering to seek leniency if the appellant confessed. *See* Syllabus, *State v. Parsons,* 108 W.Va. 705, 152 S.E. 745 (1930); *see also State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261 (1982). Second, he contends that Deputy Shackelford questioned the appellant concerning the stolen cycles after he had asked the officers to "leave him be." *See* Syl. Pt. 3, *State v. Rissler,* 165 W.Va. 640, 270 S.E.2d 778 (1980). The appellant maintains that Deputy Shackelford made promises to and questioned him while he and Deputy Shackelford were out of the hearing of the other officers. Deputy Shackelford was unable to testify at the appellant's suppression hearing and trial because he had suffered a gunshot wound in an unrelated incident. The appellant argues that because Deputy Shackelford was unable to testify, the State did not meet its burden of proof as to the voluntariness of the appellant's statement.

The other two officers testified that they had made no offers of leniency to secure a statement, and that neither of them heard Deputy Shackelford question the appellant in the patrol car or make promises of leniency to him at any time. Additionally, both of the officers testified that the appellant never indicated a desire or intention not to make a statement. The record also shows that Trooper Brewster was in the patrol car at all times with the appellant and Deputy Shackelford, and that both Deputy Shackelford and Trooper Smith took the appellant to the secretary's office at the jail and were present when he waived his *Miranda* rights and gave the inculpatory statement. The appellant, on the other hand, stated on cross-examination that he did not know which officers were present when he contends the promises of leniency were made. The testimony of Troopers Smith and Brewster, the signed waiver of rights form, the signed inculpatory statement, and the appellant's unconvincing testimony, persuades us to reject the contention advanced by the appellant that Deputy Shackelford improperly questioned and coerced the appellant.

Finally, the appellant contends that the entire statement should have been excluded by the trial court because it was not admitted by the appellant to be correct. The appellant, however, testified at the suppression hearing that in making his statement concerning the stolen cycles he told the officers "the best that I knew about it," that the statement was read to him, that "the first page seemed like what I said," and that he signed the first page of the statement, but not the second page.

The general rule regarding the admissibility of confessions was stated by this Court in Syllabus Point 5 of *State v. Starr,* 158 W.Va. 905, 216 S.E.2d 242 (1975), where we held: "The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case." An *in camera* hearing is the method prescribed for a trial court to determine the voluntariness of an inculpa-

tory statement. Syl. Pt. 1, *State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), *overruled on other grounds, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981). In the case at bar, the trial court conducted an *in camera* hearing on the voluntariness issue, and ruled that the State had met its burden with regard to the first page of the statement, but not the second page.

"It is a well-established rule of appellate review in this state that a trial court has wide discretion in regard to the admissibility of confessions and ordinarily this discretion will not be disturbed on review." Syl. Pt. 2, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978). Therefore, "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." *Id.* at Syl. Pt. 3. In this instance, the trial court's ruling is not plainly wrong or clearly against the weight of the evidence.[3] Accordingly, the appellant's conviction is affirmed.

Affirmed.

---

**3.** The appellant argues that he has been denied an opportunity for a meaningful appellate review, because the trial court did not make specific findings of fact and conclusions of law. *See State v. Clark*, 171 W.Va. 74, 297 S.E.2d 849, 854 (1982). In this case, the record is sufficient to enable this Court to fulfill its appellate review obligations. We cannot, after carefully reviewing the facts and circumstances presented in the record, say that the trial court's ruling was plainly wrong or clearly against the weight of the evidence. Nevertheless, we admonish the trial court to take greater care in the future in performing its duty of detailing on the record the basis of its ruling.