640 S.E.2d 564

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Roger Eric JONES, Defendant Below, Appellant.**

No. 33072.

Supreme Court of Appeals of West Virginia.

Submitted: Nov. 14, 2006.

Decided: Nov. 29, 2006.

Teresa C. Monk, Fifth Circuit Public Defender Corporation, Spencer, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Deputy Attorney General, Charleston, for the Appellee.

PER CURIAM.

This case involves the direct criminal appeal of Roger Eric Jones (hereinafter referred to as "Appellant") from the order entered on July 7, 2005, in the Circuit Court of Roane County whereby he was resentenced for appeal purposes for his jury con-

viction of the offense of felony murder.[1] Although Appellant maintained several trial errors in his petition for appeal, this Court accepted the petition to address a single assignment of error: whether the trial court was correct in denying Appellant's motion to suppress out-of-court statements made after he was arrested, while en route and at the Grantsville State Police Detachment for processing. After duly considering the arguments as briefed, the certified record and applicable law, we find no error and affirm the decision of the circuit court.

## I. Factual and Procedural Background

This case involves the murder of an elderly Roane County man, Oral "Sam" Jett. To help understand the alleged error, a few prefatory facts need to be mentioned about a separate yet factually similar case involving the murder of another elderly Roane County man occurring around the same time period. In late December 2002, John Moorehead died from being struck in the head by a blunt object. The body was also burned because Mr. Moorehead's trailer was set on fire after he was beaten. Although a State Police investigation of the Moorehead killing was underway at the time the murder in the present case occurred, no charges had been filed or arrest warrants issued in the Moorehead case.

On January 4, 2003, the body of Oral Jett, the victim in the present case, was discovered on a secluded road in Roane County, West Virginia. There were visible bruises and lacerations on the victim's head and face and there was evidence of a struggle both inside and outside the victim's nearby car. Based upon a tip received in an anonymous phone call, police interviewed several people having ties to Appellant. Information from the interviews eventually led Roane County Sheriff Todd Cole to file a criminal complaint in magistrate court naming Appellant as the perpetrator of the Jett murder. Based upon the facts set forth in the complaint, the magistrate issued an arrest warrant on January 8, 2003, which states: "[T]his court has found probable cause to believe that the defendant, Roger Eric Jones, ... 'did feloniously, willfully, maliciously, deliberately and unlawfully slay, kill, and murder Oral W. Jett.'" This same recitation of the crime charged appears on the criminal complaint underlying the issuance of the arrest warrant.

According to the State, Sheriff Cole and State Police Trooper Dale Fluharty[2] executed the arrest warrant by going to the home of Appellant in Calhoun County, West Virginia, at approximately 2:00 a.m. on January 8, 2003. It is undisputed that Trooper Fluharty advised Appellant of his *Miranda* rights at the time of the arrest and that Appellant waived his rights. After the arrest, the law enforcement officers transported Appellant to the Calhoun County State Police Detachment in Grantsville, West Virginia.[3] During the transport, Trooper Fluharty began a discussion with Appellant about the Moorehead murder. After Appellant made an oral statement denying any involvement with the Moorehead murder, Sheriff Cole interrogated Appellant about the Jett case. The record reflects that the questioning about the Jett murder commenced when the trio was close to arriving at the police barracks. As a result, the officers and Appellant remained in the parked police vehicle several minutes after their arrival at the police barracks in order to conclude the Jett murder interrogation. Once inside the police station, Trooper Fluharty again advised Appellant of his *Miranda* rights and Appellant completed a written form waiving his rights. The waiver form indicated that Appellant was under arrest for murder, but did not specify a murder victim. In the questioning which followed, Trooper Fluharty first interviewed Appellant about the Moorehead murder and reduced Appellant's oral statement denying involve-

1. In addition to the one count of felony murder, the jury verdict in this case included conviction of the additional charges of aggravated robbery, commission of a crime against the elderly and petit larceny. The circuit court set aside the convictions for all crimes except felony murder at the time it denied Appellant's post-conviction motions for a new trial.

2. Sheriff Cole was investigating the Oral Jett murder; Trooper Fluharty was investigating the Moorehead murder.

3. The record reflects that the distance between the arrest scene and the police station is twenty to twenty-five miles.

ment in the crime to writing for Appellant's signature. Sheriff Cole next interviewed Appellant about the Jett murder and likewise reduced oral statements to writing which Appellant signed. In Appellant's statement about the Jett case, he confessed to stealing from the victim and hitting the victim several times with a rock.

Appellant moved the trial court to suppress the statement he made regarding the Jett murder claiming that his statement was not intelligently and voluntarily made. Appellant maintained that he was misled by the police in giving the statement because while he was questioned and gave statements regarding two murders, he was not separately advised of his *Miranda* rights for each crime and he signed only one waiver form which generically stated that the charge was murder without specifying a victim name or names. Both Trooper Fluharty and Sheriff Cole testified at the suppression hearing and related that Appellant was informed that his arrest was only for the murder of Oral Jett as reflected on the arrest warrant and that they used no trickery in obtaining Appellant's admission in the Jett murder. The defense presented no evidence to the court at the suppression hearing. According to the June 24, 2004, order denying the motion to suppress, the lower court concluded from the evidence before it that

> "[n]o promises or threats were made to the defendant ... [when he] made voluntary oral statements to Sgt. Fluharty and Sheriff Todd Cole regarding his involvement in the death of Oral Jett .... after the defendant made an intelligent waiver of his right to remain silent and his right to counsel. At the Grantsville Office of the WVSP, the defendant was again advised of his Miranda rights in writing. The defendant understood his rights and made an intelligent waiver of his right to remain silent and his right to counsel .... In the taking of the written statement, neither Sheriff Todd Cole nor Sgt. Fluharty made any threats or promises to the defendant."

The statement was admitted into evidence during the jury trial. Appellant testified at the trial, stating that he and Mr. Jett were

drug runners. He admitted to being with Mr. Jett when he was murdered and claimed that two drug dealers were responsible for killing Mr. Jett. Appellant went on to explain that the out-of-court statement he made to law enforcement regarding the murder contained lies because one of the murderers threatened to harm Appellant and his family if he revealed their involvement in the crime.

Appellant was found guilty of felony murder [4] by the jury who, after subsequent deliberation, did not recommend mercy in sentencing. By sentencing order entered September 20, 2004, Appellant was sentenced to life without the possibility of parole. The trial court resentenced Appellant for purposes of appeal by order entered July 7, 2005. This Court granted the appeal on May 10, 2006, solely for review of the trial court's ruling denying suppression of the out-of-court statement.

## II. Standard of Review

As this Court stated in syllabus point three of *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978): "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." We elaborated on this standard in syllabus point two of *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994), as follows:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Our deference to the factual determinations of the trial court regarding suppression matters was further addressed in syllabus point one of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), in which we stated:

> When reviewing a ruling on a motion to suppress, an appellate court should con-

---

**4.** *See* n. 1 *supra* regarding the substance of the     jury verdict.

strue all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

We proceed now to apply these standards in examining the circumstances surrounding the suppression ruling in the instant case.

### III.  Discussion

█ Appellant contends that the signed statement he made at the state police detachment was not voluntarily given. He argues that the involuntariness is evidenced by the fact that he signed only one statement of rights form and that form only indicated the charge of murder without specifying whose murder was under investigation. Appellant further maintains that had he been informed that more than one charge possibly existed he may have requested an attorney or invoked his right to silence. According to Appellant's argument, the method of interrogation that the law enforcement officers used was intended to mislead him and lull him "into a sense of security in discussing the Moorehead investigation which he denied ... [in order to] lead [him] into the guilty confession in the Jett case."

█ Pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a criminal defendant must be fully informed of his or her constitutional rights before he or she can fairly waive them. The United States Supreme Court has further established that for a waiver of rights to be valid it must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see also* Syl. Pt. 2, *State v. Goff,* 169 W.Va. 778, 289 S.E.2d 473 (1982) ("A confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial.") "Whether an extrajudicial inculpatory statement is

voluntary or the result of coercive police activity is a legal question to be determined from a review of the totality of the circumstances" surrounding the confession. Syl. Pt. 2, *State v.Bradshaw,* 193 W.Va. 519, 457 S.E.2d 456 (1995). However, even when the totality of circumstances shows that "[m]isrepresentations ... or other deceptive practices [were employed] by police officers...[, a confession will not be invalidated unless it is shown that the deception] affected ... [the] voluntariness or reliability [of the statement]." Syl. Pt. 6, *State v. Worley,* 179 W.Va. 403, 369 S.E.2d 706 (1988); *see also* Syl. Pt. 7, *State v. Farley,* 192 W.Va. 247, 452 S.E.2d 50 (1994).

In this case, nothing in the record counters the conclusion that Appellant was told when arrested that he was charged with the murder of Oral Jett. This occurred before Appellant was informed of his *Miranda* rights at the arrest scene and before any police questioning occurred. Even though the Moorehead murder was the first subject of the questioning both during transport and at the police station, nothing in the record, including his own testimony, even suggests that Appellant was surprised or confused when the officers afterward questioned him about the Jett murder. The only evidence of coercion or duress expressed in Appellant's testimony was that which stemmed from the "real murderers" rather than law enforcement. We further observe that Appellant never questioned nor sought clarification from the officers about the charges and never indicated confusion about which murder was under discussion. We also find no evidence that Trooper Fluharty's questions regarding the Moorehead investigation played any part in Appellant's decision to admit his involvement in the Jett murder. And while we do not condone the interrogation technique employed, there is simply no indication in this case that the method of questioning influenced the voluntariness or reliability of Appellant's statement regarding his involvement in the Jett murder. In short, we find no error. There is no evidence that the trial court applied improper legal standards in this case, nor do we find that the record

reveals clear error in the lower court's factual determinations. Accordingly, we affirm.

IV. Conclusion

For the above-stated reasons, the order entered on July 7, 2005, in the Circuit Court of Roane County is hereby affirmed.

Affirmed.