# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

November 8, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 12-1311** (Logan County 11-F-154)

**Chad Williams,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Chad Williams, by counsel Robert B. Kuenzel and Erin R. Bias, appeals the resentencing order entered following his conviction for murder in the second degree. Respondent the State of West Virginia, by counsel Laura Young, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and the victim, Jason Horne, argued in front of several witnesses on January 30, 2011, and petitioner fired a warning shot in order to get everyone's attention. Petitioner's girlfriend and the victim got into a physical argument, and petitioner shot the victim, though the parties disagree as to whether the shot was intentional. Someone called 911, and the police arrived at petitioner's residence where they found a large pool of blood in the doorway of the front door, bullet holes in the walls of the house, and shell casings. The police then searched petitioner's residence and the surrounding grounds. Police returned the following day with a warrant for petitioner's arrest. While executing that warrant, law enforcement officers located the firearm used to shoot the victim. Horne later died from his injuries from the gunshot wounds. The circuit court ultimately ruled that the search was valid and allowed the admission of the firearm into evidence.

On February 9, 2011, petitioner was arrested when he was discovered at the crime scene. Petitioner gave a recorded statement to police and was then presented to a magistrate. The State contends that petitioner was properly Mirandized and placed under arrest. Petitioner alleges that he was not advised that he was going to be questioned and that the police altered the Miranda form to indicate petitioner was being questioned for the crime of murder after the statement was taken. Following a hearing on the voluntariness of that statement, on December 5, 2011, the circuit court entered an order finding that the statement was admissible in the State's case-in-chief.

1

On January 18, 2012, the circuit court entered an order addressing a number of evidentiary issues. In that order, the court found: (1) the audio statement taken from petitioner after his arrest was admissible because it was taken after petitioner had been properly advised of his Miranda rights and knowingly waived them; (2) the pictures and sketches of the crime scene could be used in the State's case-in-chief because they were prepared by investigating officers at a time when they had a right to be at the scene investigating the crime without a search warrant; (3) the gun at issue was located in plain view in a bush outside the home in the yard at the crime scene by an investigating officer who had the right to be there when the gun was found; (4) when the gun was found, an arrest warrant had been issued for petitioner, and officers were looking for petitioner; (5) petitioner had been living as a guest in the residence at issue; (6) officers had a right to be in the yard with the arrest warrant searching for petitioner who was a suspect at that time; (7) petitioner was apprehended days after the search at the same residence; (8) petitioner had no reasonable expectation of privacy of items located in plain view outside the residence in a bush at the time in question; (9) society under these circumstances would not afford an accused Fourth Amendment protection of an item in plain view in a bush surrounding a home where a crime had occurred; (10) the gun could be used in the State's case-in-chief; and (11) a search warrant was not necessary under these circumstances before the officer located the gun in the bush. The circuit court also denied petitioner's motion to suppress the gun, sketches, pictures, and audio statement.

On January 25, 2012, petitioner's counsel made an oral motion to continue the trial (set for February 6, 2012) and moved the circuit court to allow him to have the gun at issue sent to an independent firearms expert for examination. Petitioner also orally moved the court to allow him to utilize a handwriting expert to analyze the interview and Miranda rights form regarding two different ink pens allegedly used to complete that form. The State objected to the oral motion to continue as untimely, but stated it had no objection to the defense utilizing a firearms expert, with certain restrictions due to the proximity to trial. The State also objected to the handwriting expert analysis, as the motion was made following the close of discovery, in addition to issues related to the merits. The circuit court then denied the motion to continue and the motion for a handwriting expert, but granted the motion for firearm analysis by order entered on January 30, 2012.

Petitioner then filed five motions *in limine*. The court set forth its findings in a February 15, 2012 order, which appears to have been entered after the conclusion of the trial, finding the following: the State may not mention any collateral crimes and/or other wrongs evidence or any prior convictions at trial unless petitioner placed the matters into evidence, though the State was permitted to introduce evidence of drug or alcohol usage during the time of the commission of the crime at issue; the State was not permitted to present any witnesses or evidence related to petitioner's status as a convicted felon or that he may have illegally possessed a firearm at the time of this incident; the State could introduce evidence of petitioner's flight in its case-in-chief, as the issue had been decided following an in-camera hearing; the State's witnesses were allowed to use the term "homicide" in setting forth their respective opinions whether or not the death of the victim was homicide, suicide, or an accident; and the State may not mention or illicit any reference to a character trait of petitioner unless the issue is first raised by petitioner other than to describe petitioner's actions at the time of the crime and immediately prior thereto. The circuit

court also set forth stipulations and agreements of the parties, and stated that petitioner had withdrawn his request to have the gun analyzed by an expert.

Also on February 15, 2012, the circuit court entered its order setting forth the jury verdict reached on February 8, 2012, finding petitioner guilty of murder in the second degree. Prior to sentencing, petitioner moved for judgment of acquittal and to set aside the jury verdict, claiming that the shooting was an accident. During the March 19, 2012, hearing, petitioner also moved that his verdict be reduced from murder in the second degree to voluntary manslaughter. By order entered on March 30, 2012, petitioner was sentenced to thirty years with credit for time served, and his motions were denied. In that order, the circuit court noted petitioner's extensive criminal record, his prior plea to a felony drug charge, and the fact that alcohol and a gun were involved in this matter. A resentencing order was entered on September 26, 2012. Petitioner appeals from that order.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands. Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011). Further, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008).

Petitioner asserts three assignments of error in his appeal. First, petitioner contends that the warrantless search of the residence was improper, so the circuit court's admission of the alleged murder weapon and testimony related to that weapon was error. Petitioner argues that the gun was not in plain view at the time it was discovered in a bush behind the home. He asserts that the bush was not in plain view of anyone passing by the home, and that it was within the curtilage of the home, as it was adjacent to the home, lying virtually directly behind the home. Petitioner states that if the bush and gun were in plain view, the gun would have been discovered the day law enforcement officers secured the crime scene. He also argues that while law enforcement possessed a warrant for petitioner's arrest upon returning to the scene, they did not have a reason or right to search the house or curtilage. Further, he contends that the police were summoned to the home by a neighbor, so there was no consent, express or implied, by petitioner to search the home or the curtilage of the home. The dispute regarding the admissibility of the gun was brought before the circuit court prior to trial, and the circuit court conducted a suppression hearing regarding the matter. The circuit court ultimately allowed the gun to be introduced during trial.

In reviewing a circuit court's ruling on a motion to suppress, we employ

a two-tiered standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of

3

applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994).

*State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995). The testimony at the suppression hearing revealed that as the victim lay on the floor bleeding from his head, petitioner fled the scene on foot, dropping the weapon on top of some bushes. Based upon the initial investigation, officers obtained an arrest warrant for malicious wounding; petitioner does not contest the validity of that warrant. The officers testified that they returned to the scene of the crime in order to execute the arrest warrant. Due to the nature of the crime, the officers went to both the front and back doors on the home. One of the officers who went to the back door saw the gun. It is clear from the record that the officers had a legal, justifiable reason to be not only in the front of the home, but the rear of the home, as well. Therefore, we find that the circuit court's findings of fact related to the admission of the gun were not clearly erroneous. We also find that there was sufficient evidence of the officers' lawful presence at the property and discovery of the gun to permit the admission of the gun during the trial of this matter.

Petitioner next raises issues regarding his Miranda warnings; he argues that the trial court erred in finding no violation. Petitioner generally argues that he made statements to officers that are not contained in his recorded statement. One of the law enforcement officers testified that in petitioner's recorded statement, petitioner indicated that he had been eating cat food while in hiding. However, the recorded statement does not contain any reference to eating cat food. Therefore, petitioner contends that he was interrogated prior to giving a statement, which was prior to being read his Miranda rights. Petitioner, therefore, contends that the circuit court erred by allowing evidence of his recorded statement to be introduced into evidence. To the extent petitioner alleges that the circuit court should have suppressed his recorded statement, the standard for the same is set forth above. In addition, any allegations of police coercion in obtaining a statement and questions of whether a statement was voluntary are to be determined from a review of the totality of the circumstances. *State v. Milburn*, 204 W.Va. 203, 210, 511 S.E.2d 828, 835 (1998). "A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 1, *State v. Jones*, 220 W. Va. 214, 640 S.E.2d 564 (2006). Petitioner does not challenge the voluntary nature of his waiver of his Miranda rights and subsequent statements. Statements made by petitioner prior to signing the Miranda form do not lead us to the conclusion that petitioner was interrogated prior to signing the form. In looking at the standard for both the suppression of evidence and the consideration of the voluntariness of petitioner's statement to police, we find that the circuit court's admission of the recorded statement was not clearly erroneous.

As part of his second assignment of error, petitioner also argues that the circuit court erred when it denied him the ability to have the original Miranda rights form evaluated by a handwriting/ink specialist. He asserts that his Miranda rights form was altered after he signed it, violating his constitutional rights. The officer testified that a pen ran out of ink, requiring completion of the form with another pen, and the circuit court denied the motion for such expert examination. Petitioner argues that to the naked eye, there does not appear to be any skipping or trailing off of ink before the pen quits, essentially contesting the veracity of the officer's

testimony. He further argued that an expert could have established or dispelled the empty ink cartridge theory.

> A criminal defendant who desires to analyze an article or substance in the possession or control of the State under Rule 16 of the West Virginia Rules of Criminal Procedure should file a motion setting forth the circumstances of the proposed analysis, the identity of the expert who will conduct such analysis, and the expert's qualifications and scientific background. The trial court may then, in its discretion, provide for appropriate safeguards, including, where necessary, the performance of such tests at the State laboratory under the supervision of the State's analyst.

Syl. Pt. 8, *State v. Crabtree*, 198 W.Va. 620, 482 S.E.2d 605 (1996). Further, we have held that "[a]lthough we do not recognize an absolute right to analyze evidence, a motion in compliance with [the requirements set forth in Syllabus Point 8] should be denied only in cases where the trial court is satisfied that the motion is not timely made or is made in bad faith." *Id.* at 633, 618.

In this case, the State objected to sending the original Miranda rights document to another jurisdiction for ink analysis. An oral motion was made by petitioner subsequent to the close of discovery. Both officers testified that two ink pens were used to complete the form because the first pen was not working correctly. In its order, the circuit court stated that petitioner could raise his questions of fact in cross-examination of any witness. Based on the record before us, we find that the circuit court's refusal to grant petitioner's untimely motion for expert examination of the original Miranda form was not an abuse of discretion.

As an additional argument under his second assignment of error, petitioner argues that he was not promptly presented before a magistrate, as required under West Virginia Code § 52-1-5(a)(1). He states that he was arrested during normal business hours but was not presented to a magistrate until he had been questioned at the police department. He asserts that because he was not advised of his statutory rights by a magistrate before giving a statement, the circuit court's admission of those statements was in violation of West Virginia law. "Our prompt presentment rule contained in W.Va. Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered." Syl. Pt. 2, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986). However, we have previously recognized that "[c]ertain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement." *State v. Sugg*, 193 W.Va. 388, 395-96, 456 S.E.2d 469, 476-77 (1995) (citing *State v. Ellsworth J.R.*, 175 W.Va. 64, 70, 331 S.E.2d 503, 508 (1985)) (footnote omitted). According to law enforcement officers, petitioner was arrested at approximately 11:30 a.m. in Chapmanville, West Virginia. He was then driven to the Logan detachment of the State Police for booking purposes, including finger printing. While there, he signed the Miranda waiver form at 12:40 p.m., and his statement was taken. According to the State, the Magistrate Court of Logan County was closed for lunch at the time that petitioner arrived at the detachment. According to magistrate court records, petitioner

was presented before a magistrate no later than 1:40 p.m. on February 9, 2011. Based upon our review of the record before this Court and the Jail Commitment Order from the Magistrate Court of Logan County, the circuit court did not err in its determination that petitioner's statement to law enforcement should not be suppressed due to the alleged violation of the prompt presentment rule. Further, we find that there was no unnecessary delay in the presentation to the magistrate, which could prompt a violation of the prompt presentment requirement.

Petitioner's third assignment of error relates to the admission of the recorded statement of Melissa Mangus, petitioner's girlfriend. Petitioner claims that the State asked certain questions of Ms. Mangus at trial regarding petitioner's possession of a firearm in their home. However, when the State did not get the answer it desired, it asked Ms. Mangus if she recalled giving a statement to police, and she said that she did. Ms. Mangus testified that she feared the police and felt pressured to give answers they wanted to hear as they conducted a recorded statement. Petitioner contends that the State failed to set forth the purpose for playing the audio statement during trial and that the circuit court allowed the statement to be played without any instruction to the jury or limiting the scope of the recording.

The State argues that the playing of the statement, if error at all, was harmless.

> "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury." Syllabus point 2, *State v. Atkins*, 163 W.Va. 502, 261 S.E.2d 55 (1979).

Syl. Pt. 7, *State v. Doonan*, 220 W.Va. 8, 640 S.E.2d 71 (2006). Ms. Mangus was repeatedly challenged on direct examination with inconsistencies between her prior statement and her trial testimony, so the prosecution requested to play the statement in response to Ms. Mangus' contention that she was harassed during the statement. Petitioner does not assert how this statement prejudiced him at trial. In addition, petitioner failed to include a transcript or copy of the audio statement at issue in this record before this Court. The trial transcript simply indicates that the recorded audio was played, without including transcription of that recording. "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syl. Pt. 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966). Due in part to petitioner's failure to include sufficient evidence regarding the recording of which he complains, this Court cannot presume such error. Therefore, we do not find merit in petitioner's third assignment of error.

We find that the sentence imposed by the circuit court was within statutory limits and was not based on any impermissible factor. We also hold that the circuit court did not abuse its discretion in imposing sentence or entering a resentencing order.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 8, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II