No. 20-0601 – *State of West Virginia ex rel. Perri DeChristopher v. The Honorable Phillip D. Gaujot, Circuit Court Judge of Monongalia County, West Virginia, and Cesar Felix*

**FILED**
**March 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Wooton, Justice, dissenting:

Fewer propositions of law are more firmly established in this State than this: "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers."  Syl. Pt. 1, in part, *State ex rel. N. River Ins. Co. v. Chafin*, 233 W. Va. 289, 758 S.E.2d 109, 110 (2014).  Additionally, "[w]here the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction."  Syl. Pt. 5, in part, *State ex rel. Harris v. Hatcher*, 236 W. Va. 599, 760 S.E.2d 847, 848 (2014)); *see also State ex rel. State v. Wilson*, 239 W. Va. 802, 808, 806 S.E.2d 458, 464 (2017) (to same effect).  In the instant case, the majority has given these limiting principles of review mere lip service, engaging in extensive appellate factfinding and substituting its judgment for that of the circuit court.

Initially, it must be emphasized that the petitioner, State of West Virginia ("the State"), has utterly failed to establish that the circuit court's suppression of the DNA evidence is a death knell for its case against the respondent, Cesar Felix ("Mr. Felix").  On

1

this point we have only the dueling representations of the attorneys: the prosecuting attorney says that the DNA evidence is "compelling" and "absolutely necessary" to the State's case, while the defense attorney ripostes that the State has other evidence, specifically: statements from Mr. Felix's coworkers at Casa, where the events leading up to the alleged rape were set in motion; the testimony of the victim, who was shown video footage from Casa and identified Mr. Felix as a possible suspect; photographs of Mr. Felix's vehicle; surveillance video footage from outside Casa; and evidence supplied by the so-called translator, Stephanie Mayhew ("Ms. Mayhew"), concerning a house to which Mr. Felix allegedly attempted to take the victim. As the party seeking extraordinary relief, the State has the burden of proof on this key point, yet the appendix record does not contain any documentation or other evidence of any sort. Amazingly, although the voluntariness issue in this case rises or falls on what was said and done during the course of Detective Daniel Trejo's ("Detective Trejo") interview of Mr. Felix, neither the tape nor the transcript of this interview has been made a part of the record.[1] Thus, although it cannot be gainsaid that admission of the DNA evidence would have some effect on a jury's determination of Mr. Felix's guilt or innocence, there is nothing in the record before this Court to show that suppression of this evidence was so flagrantly erroneous that the State "was deprived of its right to prosecute the case or deprived of a valid conviction." *Harris*, 236 W. Va. at 600, 760 S.E.2d at 848. Therefore, the writ of prohibition should not issue.

---

[1] At oral argument, counsel informed the Court that both a tape and a transcript exist.

Additionally, the State has utterly failed to demonstrate that the circuit court abused its discretion in determining that Mr. Felix's consent to the DNA testing was not voluntarily given. This Court has held that

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, *particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues*. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt. 1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996) (emphasis added); *see also State v. Blevens*, 231 W. Va. 135, 148, 744 S.E.2d 245, 258 (2013) (circuit court's voluntariness ruling can only be reversed where it is plainly wrong or clearly against the weight of the evidence). I can think of no principled reason that the *Lacy/Blevens* rule should not apply with equal force, but in the converse, where it is the State seeking reversal of a suppression ruling: an appellate court should construe all facts in the light most favorable to Mr. Felix, who was the prevailing party below. Further, particular deference should be given to the circuit court's ruling on an issue of voluntariness, because the determination of this issue is based on the most fact-driven inquiry possible: the totality of the circumstances. *See, e.g., State v. Smith*, 218 W. Va. 127, 132, 624 S.E.2d 474, 479 (2005); *State v. Milburn*, 204 W. Va. 203, 210, 511 S.E.2d 828, 835 (1998); *State v. Bradshaw*, 193 W. Va. 519, 527, 457 S.E.2d 456, 464 (1995); *State v. Goff*, 169 W. Va. 778, 783, 289 S.E.2d 473, 476-77 (1982). A trial court's ruling on a voluntariness issue

"requires careful evaluation of all the circumstances of the interrogation." *Goff*, 169 W. Va. at 780, 289 S.E.2d at 485 (citing *Mincey v. Arizona*, 437 U.S. 385, 401 (1983)), and "[n]o one factor is determinative." Syl. Pt. 7, in part, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994); *see also State v. Showalter*, No. 16-0086, 2017 WL 75958, at *3 (W. Va. Jan. 9, 2017) (memorandum opinion).

Historically, this Court has always applied a deferential standard of review to a circuit court's determination of whether a waiver of rights was voluntary. *See*, *e.g.*, *State v. Lamp*, 163 W. Va. 93, 96, 254 S.E.2d 697, 699 (1979) ("The trial court has a wide discretion as to the admission of confessions and ordinarily this discretion will not be disturbed on review.") (citing Syl. Pt. 2, in part, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978)); *State v. Woods*, 169 W. Va. 767, 770, 289 S.E.2d 500, 502 (1982) (same). We reformulated the standard of review to some extent in *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994), where we held in syllabus point two that

> [t]his Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

*Id.* at 250, 452 S.E.2d at 53; *see also* Syl. Pt. 1, *State v. Bouie*, 235 W. Va. 709, 776 S.E.2d 606 (2015); Syl. Pt. 2, *State v. Marcum*, 234 W. Va. 415, 765 S.E.2d 304 (2014); Syl. Pt.

2, *State v. Jones*, 220 W. Va. 214, 640 S.E.2d 564 (2006).  Although this reformulation wasn't new in any real sense – this Court has always applied a de novo standard of review to a circuit court's conclusions of law and a deferential standard of review to its findings of fact – it appears to have opened the door to the type of judicial activism evidenced in the majority opinion.  Plainly, the members of the majority have put themselves in the shoes of the circuit court and simply substituted their judgment for the court's judgment, ignoring and discounting any evidence that doesn't support the State's position – and doing it all on the basis of a cold (and uninformative)[2] record.

An examination of the evidence adduced at the suppression hearing, construed in a light most favorable to Mr. Felix, who prevailed below, demonstrates that the circuit court's ruling had ample evidentiary support. First, it is critical to note that when Ms. Mayhew contacted Detective Trejo to set up Mr. Felix's interview, she was not told that Mr. Felix was a suspect, let alone *the* suspect, in an alleged sexual assault; indeed, the evidence was that everyone at Casa had been led to believe "two black guys" were suspected of the crime.  In this regard, we have held that "some information should be given to the defendant as to the nature of the charge in order that he can determine whether to intelligently and voluntarily exercise or waive his . . . rights."  *State v. Livermon*, No. 15-0087, 2016 WL 6805005, at *5 (W. Va. Nov. 17, 2016) (memorandum opinion) (citing

---

[2] *See* text *supra*; the key evidence in this case was not made a part of the appendix record.

*Goff*, 169 W. Va. at 784 n.8, 289 S.E.2d at 477 n.8). Second, in her testimony at the suppression hearing, Ms. Mayhew did not contest counsel's assertion that she had asked far more questions during the interview than Detective Trejo had. Thus, if the circuit court's interpretation of the evidence is to be credited – and again, the State has not seen fit to provide us with either a tape or a transcript that could belie this interpretation -- the detective was a passive onlooker during the bulk of "his" interview of the suspect. Third, Detective Trejo did not dispute that during the interview, Ms. Mayhew "volunteered information from herself without that information coming from Mr. Felix." Fourth, Ms. Mayhew agreed that it was *she*, not the detective, who asked Mr. Felix to sign the *Permission to Search* form and give a DNA sample, because she wanted him to prove his innocence. Fifth, although the form expressly states that Detective Trejo informed Mr. Felix of his constitutional right to refuse to search, the detective testified that he never explained or attempted to discuss Mr. Felix's rights with the suspect and never informed him of his right to refuse to give a DNA swab. Rather, the detective felt confident that Ms. Mayhew was doing all this, despite the fact that she was doing it in Spanish, a language in which the detective is admittedly not fluent. "[I]t appeared to me that – from what I can gather *from the little that I do know*, it appeared to me that she was translating to a point where he understood." (Emphasis added.) Sixth, although Detective Trejo testified that when the services of an interpreter are required, the regular protocol in his department is to go through an agency to retain the services of one "certified by some organization or some government entity[,]" the detective did not make any attempt to determine whether Ms. Mayhew, the self-styled "free-lance interpreter," was actually qualified to perform

6

what should have been her sole task: to translate the detective's question into Spanish and then to translate Mr. Felix's answers into English. Seventh, in light of testimony that numerous questions were asked of Detective Trejo by Ms. Mayhew, in English and without translation for the benefit of Mr. Felix; that numerous questions were asked of Mr. Felix by Ms. Mayhew, in Spanish and without translation for the benefit of Detective Trejo; that Ms. Mayhew was giving legal advice to Mr. Felix – legal advice that no competent attorney would ever have given; and that Ms. Mayhew was volunteering information to Detective Trejo on her own, not as a translation of anything Mr. Felix was saying, it is a reasonable inference that Ms. Mayhew was running the show during this interview and that Mr. Felix had no clear idea what was going on.

Notwithstanding the clear mandate in our case law as to the limited scope of appellate review on a motion to suppress, in the instant case the majority has elected to review the circuit court's fact-based ruling – granting the respondent's motion to suppress evidence on the ground that his consent to DNA testing was not given voluntarily – and to reverse that ruling as a matter of law. In so doing, the majority has concluded that there could only be one "correct" answer to the voluntariness issue under the facts and circumstances presented to the circuit court, despite the fact that only the lower court had the benefit of hearing the witnesses' testimony and evaluating their credibility. Further, the majority has cherry-picked the facts which support the State's position and discounted or totally ignored the facts that do not. Finally, in construing all of the facts and possible

7

inferences in a light most favorable to the State, despite the fact that Mr. Felix was the prevailing party below, the majority has put its thumb on the scale of justice rather than "hold the balance nice, clear and true between the State and the accused." *State v. Varner*, 212 W. Va. 532, 538, 575 S.E.2d 142, 148 (2002).

Accordingly, I respectfully dissent.