IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**October 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-1259

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

JAMES EVERETT MARCUM,
Defendant Below, Petitioner

Appeal from the Circuit Court of Wayne County
The Honorable James H. Young, Jr., Judge
Criminal Action No. 10-F-017

AFFIRMED

Submitted: September 17, 2014
Filed: October 30, 2014

Dana F. Eddy, Esq.
WV Public Defender Service
Charleston, West Virginia
Attorney for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Scott E. Johnson, Esq.
Senior Assistant Attorney General
Julie Blake, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorney for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'The trial court has wide discretion as to the admission of confessions and ordinarily this discretion will not be disturbed on review.' Syllabus point 2, *State v. Lamp*, 163 W. Va. 93, 254 S.E.2d 697 (1979)." Syl. Pt. 2, *State v. Woods*, 169 W. Va. 767, 289 S.E.2d 500 (1982).

2.      "This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions."  Syl. Pt. 2, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994).

3.      "The special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation.  To the extent that language in *State v. Preece*, 181 W. Va. 633, 383 S.E.2d 815 (1989), and its progeny, may be read to hold differently, such language is expressly overruled." Syl. Pt. 8, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).

4. "'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syllabus point 5, *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975)." Syl. Pt. 1, *State v. Woods*, 169 W. Va. 767, 289 S.E.2d 500 (1982).

5. "To safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion." Syl. Pt. 2, *State v. Fields*, 225 W. Va. 753, 696 S.E.2d 269 (2010).

Workman, Justice:

This case is before the Court upon the appeal of the Petitioner, James Marcum, from the September 14, 2012, Order re-sentencing[1] the Petitioner to a determinate term of forty years in prison following his jury conviction for second degree murder. The Petitioner argues that the circuit court erred: 1) in the manner it conducted the suppression hearing, by shifting the burden to the Petitioner and requiring him to put on evidence first in order to make a showing that would trigger the State's rebuttal of the Petitioner's suppression grounds; and, 2) in finding that the Petitioner's statement to police was voluntarily given. Based upon a review of the parties' briefs and oral arguments, the appendix record, and all other matters before the Court, we affirm the trial court's decision.

I. Facts

On December 9, 2009, the Petitioner and his cousin, Jim Ward, were together at Mr. Ward's home in Wayne County, West Virginia. The two men had been drinking and both were intoxicated. They got into an altercation, which evolved into Mr. Ward stabbing the Petitioner twice with a bayonet. The Petitioner, in turn, got the bayonet from Mr. Ward and stabbed his cousin in the back three times, killing him.

---

[1]The Petitioner was originally sentenced on August 26, 2011, following his jury conviction on July 29, 2011. The Petitioner was re-sentenced on September 14, 2012, for appellate purposes.

The Petitioner was taken to Three Rivers Medical Center in Louisa, Kentucky, for treatment of his injuries. He underwent surgery and received pain medicine.[2]

Trooper R. J. Drake of the West Virginia State Police[3] went to the medical center to interview the Petitioner as part of his investigation into Mr. Ward's murder. Shortly after midnight on December 10, 2009, Trooper Drake took a statement from the Petitioner. The interview lasted about thirty minutes and was videotaped. During this time, Trooper Drake informed the Petitioner that the officer was outside his jurisdiction, that he was not arresting the Petitioner, that he was not fully aware of what was going on, although he knew that Mr. Ward was dead, that criminal charges may be pending, and that the Petitioner may be arrested in the near future for murder. Trooper Drake also confirmed that the Petitioner could read and understood English. Trooper Drake gave the Petitioner his *Miranda*[4] rights and confirmed with the Petitioner that he understood those rights. The officer then asked the Petitioner to sign a waiver of *Miranda* form.

The Petitioner gave Trooper Drake a statement about the events leading up to his cousin's death. The Petitioner stated that both he and his cousin had been drinking. The

---

[2]According to the record, the Petitioner was taking Demerol and Percocet for his pain.

[3]Trooper Drake was accompanied by another state trooper.

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

two argued about money. The Petitioner stated that his cousin, Mr. Ward, got up and pulled "a big sword[5]" out of the case and told the Petitioner that he was going to kill him. The Petitioner stated that Mr. Ward stabbed him two times. The Petitioner stated that he grabbed the sword by the blade and the next thing he knew Mr. Ward was down and the Petitioner "must have hit him." The Petitioner stated he must have hit Mr. Ward "two or three" times to get him off the Petitioner. The Petitioner could not remember where he had struck his cousin.

The Petitioner was indicted by a grand jury for the murder of Mr. Ward on March 2, 2010. The Petitioner moved to suppress his videotaped statement that he gave to Trooper Drake. In the motion, the Petitioner admitted that he was not under arrest at the time the statement was made and that he signed a waiver of rights form. Nonetheless, the Petitioner contended that "he was under the influence of medications which rendered him incapable of voluntarily and knowingly waiving his constitutional right to remain silent and to be represented by an attorney at this critical stage of the criminal investigation against him."

On October 4, 2010, the trial court held a suppression hearing regarding the Petitioner's statement. During the hearing, the Petitioner's counsel conceded that his motion

---

[5]The sword was later identified as a bayonet.

was not predicated upon the Petitioner not receiving his *Miranda* warnings, as the Petitioner stated that he had signed a *Miranda* form, referring to the waiver signed by the Petitioner. Additionally, the Petitioner's counsel also conceded that the motion was not based upon any coercion or threats as he stated:

> I think the officers were there to take a statement from him and didn't do anything wrong. It's just that under the circumstances, with his hospital condition, having just gone through surgery, having been on pain medication for the entire day, we feel that that raises an issue as to whether his statement was knowing, whether he knew the rights that he was waiving in light of all the medication that he was . . . undergoing at the time.

The Petitioner, however, argued that "it's the state's burden to establish that the statement in this case, which was given by Mr. Marcum in his hospital room after his surgery, was a knowing and voluntary waiver." The trial court responded: "I think you have to raise the issue, what it is. I think you have to put something on, whether it's – you have to make the issue – raise the issue. I don't think you have the burden, but I do think you have to raise which issues we're talking about. Is it knowing? Is it voluntary? Is it both?" The Petitioner's counsel countered: "Okay. That's fair."

In seeking to ascertain exactly what issue the Petitioner sought to have resolved regarding the statement he gave to police in light of the concessions made, the trial court found that the Petitioner was raising a "knowing issue and understanding issue," and that essentially "I think what you're saying is either his medical state made him in such a position

4

that he did not understand, know what he was signing or know the statement that he was giving." The Petitioner's counsel agreed with the circuit court's assessment of the motion to suppress. The Petitioner's counsel then stated: "Then let's swear [in] . . . Mr. Marcum . . . ."

The Petitioner testified that he was in pain and did not feel like he "was all there" or was "groggy." Despite this feeling, however, the Petitioner stated that he remembered the officers coming to get a statement from him. When he gave the statement, he remembered being informed of his *Miranda* rights and he remembered signing the *Miranda* rights waiver form. He also stated that he agreed to give the statement and understood that he could stop the statement at any time, but did not choose to do so. He testified that he gave the officer his side of the story. He further stated that he did not have any trouble reading and writing. The Petitioner also testified that the officers did not threaten or coerce him. The Petitioner, however, stated that he did not know that he was waiving his constitutional rights when he initialed the form and signed his name.

After the Petitioner testified, the trial court found that "I think his testimony has raised some issues, at least on the knowing and the more narrow issue, his saying that it may have – that the medication may have reduced his voluntariness to provide the statement." The trial court then allowed the State to put on evidence regarding this issue.

5

Trooper Drake testified that the Petitioner appeared to be coherent and understood the questions he asked. According to the trooper, the Petitioner responded in an appropriate manner to the questions. Further, after he gave the statement, he was asked to go over the statement again and the Petitioner recited his statement a second time in a manner consistent with the first time.

By order entered October 21, 2010, the trial court denied the motion to suppress. The court determined that the statement "given by the Defendant was voluntarily and knowingly given after the Defendant intelligently and knowingly waived his constitutional rights." The issue came up again on July 29, 2011, during the jury instruction conference. The Petitioner offered an instruction concerning the jury's consideration of whether the statement was freely and voluntarily given.[6] The circuit court, in reviewing the

---

[6]The proposed instruction that was given to the jury was as follows:

> The Court has admitted into evidence a statement made by Mr. Marcum to police officers. If you believe by a preponderance of the evidence that this statement was made by the Defendant freely and voluntarily, as assessed under the totality of the surrounding circumstances, both the circumstances of the Defendant and the details of the interrogation, then you may consider such statement as part of the evidence in the case and you may give it such weight and take part of such statement – such weight and credit, as you may believe or disbelieve all or any parts of such statements. However, if you do not believe that the statement was freely and voluntarily made to the police officers, then you may reject the

(continued...)

6

instruction, stated "I thought the standard was you had to raise it [referring to the issue of voluntariness]. The circuit court then stated: "I agree with you my understanding of the law was wrong. I don't know that you would have had to put him [referring to the Petitioner] on, and I would have given this instruction whether you would have put him on or not." There was no other issue or objection raised by the Petitioner at this time regarding the manner in which the trial court had conducted the suppression hearing.

On August 29, 2011, at the conclusion of all the evidence, the jury convicted the Petitioner of second degree murder. The Petitioner was sentenced to a determinate term of forty years in prison and now appeals.

## II. Standard of Review

This Court previously has held that "'[t]he trial court has wide discretion as to the admission of confessions and ordinarily this discretion will not be disturbed on review.' Syllabus point 2, *State v. Lamp*, 163 W. Va. 93, 254 S.E.2d 697 (1979)." Syl. Pt. 2, *State v. Woods*, 169 W. Va. 767, 289 S.E.2d 500 (1982). We, however, also held in syllabus point two of *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994), that

> [t]his Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of

---

[6](...continued)
statement from any consideration.

7

whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Keeping the foregoing standards of review in mind, we examine the issues raised by the Petitioner concerning the admission of his statement.

## III. Analysis

The Petitioner argues that the trial court erred in the manner it conducted the suppression hearing concerning his videotaped statement. The Petitioner maintains that the trial court erroneously shifted the burden of proof to him to proceed first and produce evidence showing that the statement was not voluntary. As the Petitioner argues, "the defendant was required to shoulder the burden to obtain the right to have a suppression hearing, and[] the State thereby gained the advantage of being able to cross-examine the defendant without showing first his statement was voluntary." Conversely, the Respondent argues that the Petitioner never objected to the procedure put in place by the circuit court regarding the suppression hearing.

It is well-established law that

[t]he special safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather only where a suspect in custody is subjected to interrogation. To the extent that language in *State v. Preece*, 181 W. Va. 633, 383

8

S.E.2d 815 (1989), and its progeny, may be read to hold differently, such language is expressly overruled.

Syl. Pt. 8, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999). "Miranda rights are not triggered unless there is custody[.]" *Farley*, 192 W. Va. at 254 n.10, 452 S.E.2d at 57 n.10 (citing *State v. George*, 185 W. Va. 539, 408 S.E.2d 291 (1991)).

In this case, the Petitioner conceded in his motion to suppress and during the hearing on that motion that he was not in custody at the time he gave a statement. The safeguards outlined in *Miranda*, therefore, were not required and whether the Petitioner waived his *Miranda* rights is not an issue. *See id.* Further, notwithstanding the Petitioner not being taken into custody, he admitted that the state trooper had given him his *Miranda* warning and that the Petitioner had signed a waiver of rights form. Finally, the Petitioner admitted, prior to any request for evidence by the trial court, that the Petitioner was not coerced and that the state police officers did nothing improper.

Our law is well-established that

"'[t]he State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syllabus point 5, *State v. Starr*, 158 W. Va. 905, 216 S.E.2d 242 (1975)."

*Woods*, 169 W. Va. at 767, 289 S.E.2d at 501, Syl. Pt. 1. We, however, also have enunciated

9

the following law in syllabus point two of *State v. Potter*, 197 W. Va. 734, 478 S.E.2d 742 (1996) that

> [w]hen a suspect *willingly* goes to the police station for questioning at the request of the investigating officer, and *the suspect responds that he or she wishes to give a statement despite the officer's warnings regarding the severity of the allegations against the suspect, such statement is admissible as a voluntary confession, unless the suspect can show that he or she was in custody or that the statement was not voluntary.*

(Emphasis added).

Additionally, under West Virginia Rule Evidence 611, "[t]he court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth . . . ." This Court also held in syllabus point two of *State v. Fields*, 225 W. Va. 753, 696 S.E.2d 269 (2010), "[t]o safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion."

Our review of the record reveals that the sole issue before the trial court during the suppression hearing was whether the Petitioner's voluntariness in giving the statement was impacted by the medications that he was taking at the time he spoke with Trooper Drake. The circuit court required the Petitioner to produce some evidence on the issue he raised in

10

his motion, prior to requiring the State to produce its evidence of voluntariness. In light of the Petitioner's concessions that he was not in custody, had signed a waiver of his *Miranda* rights, had not been coerced, and that the state police had done nothing wrong, the circuit court had the right under Rule 611 to change the order of production of the evidence. The circuit court did not alter the burden of proof, it merely required the Petitioner to go first in producing evidence regarding how the medications made him incapable of voluntarily and knowingly waiving his constitutional right to remain silent. Even if the State had produced its evidence first at the suppression hearing, the Petitioner would still have had to offer evidence to show that he did not remember giving the statement, that the statement was not knowingly given or that the statement was not voluntary. *See Potter*, 197 W. Va. at 734, 478 S.E.2d at 742. Moreover, the Petitioner did not challenge the procedure used by the trial court or object to the circuit court "requiring" him to testify. As the record indicates, the trial court did not require the Petitioner to testify, rather, it was the Petitioner's counsel who called the Petitioner to testify during the hearing. We have often stated that "[g]enerally the failure to object constitutes a waiver of the right to raise the matter on appeal." *State v. Asbury*, 187 W. Va. 87, 91, 415 S.E.2d 891, 895 (1992); *see also* Syl. Pt. 1, in part, *Mowery v. Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971) ("[T]his Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken.").

The Petitioner's second assignment of error is that the circuit court erred in

finding that his statement was voluntarily given to the police. The Respondent argues that the State proved by a preponderance of the evidence that the statement was admissible.

This Court stated in *Potter*:

> Where the question on appeal is whether a confession admitted at trial was voluntary and in compliance with *Miranda* with respect to issues of underlying or historic facts, a trial court's findings, if supported in the record, are entitled to this Court's deference. However, there is an independent appellate determination of the ultimate question as to whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of *Miranda* and the United States and West Virginia Constitutions.

197 W. Va. at 741, 478 S.E.2d at 749.

Reviewing the record in this case, we find that the circuit court correctly determined that the Petitioner's statement was voluntary. The circuit court found that the Petitioner testified that he recalled making the statement to Trooper Drake, even though the Petitioner was in the hospital and receiving pain medication. The circuit court found that the Petitioner never asserted that he did not understand his rights. Further, the Petitioner admitted that the statement did not result from any form of coercion. The circuit court also found that one of the troopers, who was present when the Petitioner gave his statement, testified that the Petitioner appeared to understand the questions and answers contained within the statement. Finally, the circuit court viewed the videotape of the Petitioner's

12

statement and found that "during the videotaped statement, the Defendant appeared to understand the questions and answers given." Under these circumstances, we conclude that the circuit court did not err in admitting the Petitioner's statement into evidence.

## IV.  Conclusion

Based upon the foregoing, the decision of the Circuit Court of Wayne County is affirmed.

Affirmed.