IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0639

_____

FILED

June 16, 2015
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

DARNELL CARLTON BOUIE,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Harrison County
The Honorable James A. Matish, Judge
Criminal Action No. 13-F-76-3

AFFIRMED

_____

Submitted: May 12, 2015
Filed: June 16, 2015

Chad L. Taylor, Esq.                          James Armstrong, Esq.
Simmerman Law Office, PLLC                    Assistant Prosecuting Attorney
Clarksburg, West Virginia                     Harrison County Prosecuting
                                              Attorney's Office
James E. Hawkins, Jr., Esq.                   Clarksburg, West Virginia
Buckhannon, West Virginia                     Counsel for the Respondent
Counsel for the Petitioner

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.     "'This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.' Syl. Pt. 2, *State v. Farley*, 192 W.Va. 247, 452 S.E.2d 50 (1994)." Syl. pt. 2, *State v. Marcum*, 234 W. Va. 415, 765 S.E.2d 304 (2014).

2.     "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.     "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt." Syl. pt. 1, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

4.     "An adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate pursuant to *W.Va.Code,* 62-1-5 [1965], and is, *inter alia,* informed pursuant to *W.Va.Code,* 62-1-6 [1965], of the complaint against him and of his right to counsel." Syl. pt. 1, in part, *State v. Gravely*, 171 W. Va. 428, 299 S.E.2d 375 (1982).

5.     "Pursuant to *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article III of the *West Virginia Constitution* bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006).

6.     "'Under the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* and Section 14 of Article II of the *West Virginia Constitution,* a testimonial statement is, generally, a statement that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' Syl. Pt. 8, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006)." Syl. pt. 8, *State v. Kaufman*, 227 W. Va. 537, 711 S.E.2d 607 (2011).

7. "The admission of demonstrative evidence rests largely within the trial court's discretion, and an appellate court will not interfere unless the trial court has abused that discretion." Syl. pt. 14, in part, *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995).

8. "'In order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.' Syllabus point 2, *State v. Nichols,* 208 W.Va. 432, 541 S.E.2d 310 (1999), *modified, State v. McCraine,* 214 W.Va. 188, 588 S.E.2d 177 (2003)." Syl. pt. 9, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014).

9. "'"In order for the State to prove a conspiracy under *W.Va.Code,* 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syllabus Point 4, *State v. Less,* 170 W.Va. 259, 294 S.E.2d 62 (1981).' Syllabus Point 6, *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988)." Syl. pt. 3, *State v. Stevens*, 190 W. Va. 77, 436 S.E.2d 312 (1993).

10. "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Syl. pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

Benjamin, Justice:

Darnell Carlton Bouie appeals the circuit court's entry of judgment against him on the jury's verdict, convicting him of the felony murder of Jayar Poindexter and of conspiracy to commit burglary of Poindexter's residence. Discerning no error in the proceedings below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the prosecution's evidence at trial, at about 3:15 a.m. on January 13, 2010, Bouie joined with Ennis Charles Payne to steal money and drugs from Poindexter's Clarksburg apartment. The pair had arrived at the apartment complex with three other men, who waited with the group's two vehicles parked some distance away. As Bouie and Payne prepared to enter a rear bedroom window, they unexpectedly encountered Poindexter, who had left his bed to investigate upon hearing the duo approach. During the confrontation that followed, Payne fired his .25 caliber pistol through the window into Poindexter's chest, killing him. In September 2012, arrest warrants were issued for Bouie and Payne. At the time, Bouie was incarcerated in Butler County, Pennsylvania, in connection with another criminal proceeding, where he remained while awaiting extradition to West Virginia.

On October 25, 2012, the lead investigator of the murder, Sergeant Josh Cox of the Clarksburg Police Department, arrived in Pennsylvania to serve Bouie with

1

the arrest warrant and take him back to West Virginia. Sergeant Cox transported Bouie to the police station for processing, then to the North Central Regional Jail in Doddridge County. On the way to the jail, Sergeant Cox stopped at a gas station to refuel his cruiser. While the cruiser was being refueled, Bouie asked to see a copy of the criminal complaint against him. Sergeant Cox complied, and at trial, he related the conversation that ensued:

> Q.   Once Mr. Bouie looked at the criminal complaint what did he say?
>
> A.   He asked me why was he charged [with murder] because he was not the shooter.
>
> Q.   What was your response?
>
> A.   I said because you guys went up there to break into his house.
>
> Q.   And at that point in time what did he respond with?
>
> A.   He stated that he just walked around the residence, and that him and the victim were friends.
>
> Q.   Okay. Did he state that he was there at the window at the time that this happened?
>
> A.   No, he just said he walked around the residence.[1]

---

[1] Sergeant Cox's trial testimony concerning the conversation was not materially different from the account he gave at a pretrial hearing on October 31, 2013. During the hearing, it was revealed on cross-examination that Sergeant Cox: (1) informed Bouie that not all the evidence was set forth in the complaint; (2) asserted that he could prove Bouie was at the crime scene; and (3) ruminated that he had spent three years trying to get Bouie's side of the story. Nonetheless, an examination of the hearing transcript and of the circuit court's ruling leads to the ineluctable conclusion that any portion of the

(continued . . .)

2

Shortly after his arrival at the North Central Regional Jail, Bouie was transferred to the Central Regional Jail in Braxton County. The grand jury subsequently returned a two-count indictment against Bouie and Payne on May 7, 2013, charging each with the felony murder of Poindexter and with conspiracy to commit burglary of Poindexter's residence. Thereafter, the circuit court granted Bouie's motion to sever his trial from that of Payne.

Bouie's jury trial commenced on March 17, 2014, and it continued for five days. Among the trial witnesses was Aaron Carey, an acquaintance of Payne, who testified that mere days after the murder, Payne confided to him that "he had shot somebody in a robbery" to procure money and drugs. The prosecution also produced evidence of Bouie's phone calls from the Central Regional Jail, during which he volunteered:

> 10/31/2012 — "I know the only thing they got is that print man, that's the [expletive] it. And that ain't enough to convict nobody of no murder or nothing."

> 11/02/2012 — "I already know what they got – they got that one [expletive] print and that's the [expletive] it. E needs to get that discovery."

conversation that might have been considered provocative on Sergeant Cox's part occurred only after Bouie had already made the statements ultimately admitted against him.

3

12/04/2012 — "If I would have [expletive] listened I wouldn't even be in none of this shit, I should have then changed my [expletive] life around. I don't think that [expletive] E.C. is saying nothing man."[2]

No fingerprint evidence was discovered at the crime scene. Instead, the investigators found two sets of footprints in the snow beneath Poindexter's bedroom window, one made by boots and the other by sneakers. The prosecution attempted to link the latter set of footprints to the shoes that Bouie appeared to be wearing in surveillance videos taken the night of the murder.

The videos led Sergeant Cox to believe that the shoes were Nike Air Force One sneakers. Upon conducting an internet search, Sergeant Cox found sneakers of that brand for sale on eBay; the offered shoes were of a similar color to those in the video, that is, they were white with blue outsoles. Sergeant Cox purchased the shoes and sent them to the FBI at Quantico, Virginia, together with casts and photos of footwear impressions taken from the snow-covered ground outside Poindexter's apartment, as well as screen captures of the videos in which the shoes were shown. An FBI expert testified at trial that the comparison revealed "areas of similarity" between the exemplar shoes and the crime scene impressions, but that he could not conclude that the impressions had been made by the exemplar brand.

---

[2] Bouie's mentions of "E" and "E.C." appear to have been intended to refer to Payne.

A second FBI expert testified that the video evidence was of insufficient quality to allow her to conclude that Bouie had been wearing the exemplar brand while on camera. The latter expert nonetheless noted, much as her colleague had, "several similarities" between the exemplar shoes and those worn by Bouie. Thereafter, Sergeant Cox testified in agreement with counsel's questioning that, based on his lay observations, he discerned "similarities in coloration and design" between the exemplar and photographed shoes, and "similarities between the sole pattern of the [e]xemplar shoes and the sneaker foot impressions left outside the victim's apartment."

The jury was charged and the parties presented their closing arguments on March 21, 2014. After deliberating for about two hours, the jury found Bouie guilty on both counts alleged in the indictment. In accordance with the jury's recommendation, the circuit court sentenced Bouie to life with mercy on his conviction of felony murder, and to an indeterminate sentence of imprisonment from one to five years on the conviction of conspiracy to commit burglary. From the judgment of conviction entered May 19, 2014, Bouie appeals.

## II. STANDARD OF REVIEW

In evaluating the admissibility of inculpatory statements given by an accused in police custody, we are "'constitutionally obligated to give plenary,

independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination.'" Syl. pt. 2, in part, *State v. Marcum*, 234 W. Va. 415, 765 S.E.2d 304 (2014) (quoting syl. pt. 2, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994)). A defendant's constitutional rights may also, on occasion, be implicated by the admission of certain evidence against him at trial. Nonetheless, "a trial court's rulings on the admissibility of evidence, 'including those affecting constitutional rights, are reviewed under an abuse of discretion standard.'" *State v. Kennedy*, 229 W. Va. 756, 763, 735 S.E.2d 905, 912 (2012) (quoting *State v. Marple*, 197 W. Va. 47, 51, 475 S.E.2d 47, 51 (1996)) (internal citation omitted).

Bouie's statements at the Central Regional Jail are alleged to have been procured in violation of West Virginia Code § 31-20-5e (2002), governing phone calls by prisoners. The issue presents "a question of law or involv[es] an interpretation of a statute," requiring de novo review. Syl. pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

Finally, in evaluating the sufficiency of the evidence supporting one or more of a defendant's convictions, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt." Syl. pt. 1, in part,

6

*State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We may sustain the defendant's challenge to a particular conviction only if we fail to assure ourselves that, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *Id.*

## III. ANALYSIS

### A. Bouie's Statements to Sergeant Cox

Within a month following the indictment, on June 4, 2013, the prosecution moved to determine the admissibility of Bouie's statements made to Sergeant Cox in the police cruiser on the way to jail. The circuit court carefully considered the matter, holding its decision in abeyance until shortly before trial, when, on March 12, 2014, it entered a written order granting the prosecution's motion and declaring the statements admissible. Bouie maintains that the circuit court's ruling violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. With respect to the latter contention, Bouie points out that he made the statements while yet under detainer with respect to the Pennsylvania proceeding, in which he was represented by an attorney. Bouie emphasizes that he did not waive counsel's presence prior to giving his inculpatory statements.

7

### 1. Sixth Amendment Right to Counsel

The Sixth Amendment right to counsel attaches "'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *State v. Moore*, 158 W. Va. 576, 582, 212 S.E.2d 608, 612 (1975) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). We have elaborated that "[a]n adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate . . . and is, *inter alia,* informed . . . of the complaint against him and of his right to counsel." Syl. pt. 1, *State v. Gravely*, 171 W. Va. 428, 299 S.E.2d 375 (1982).

Moreover, the right to counsel afforded by the Sixth Amendment is offense-specific, that is, it "arises as to the specific offense which is charged." *State v. Williams*, 226 W. Va. 626, 629, 704 S.E.2d 418, 421 (2010). In *Williams*, the defendant was incarcerated awaiting hearing on a petition for revocation of probation imposed as the result of a prior conviction; the defendant had been appointed counsel for purposes of the hearing. While in custody, the defendant was questioned regarding more recent criminal activity and gave incriminating statements that led to him being charged with third-degree sexual assault. We concluded that the defendant was not constitutionally entitled to have his appointed counsel present during his interrogation in the assault investigation, because the questioning pertained to a different offense than the prior conviction.

8

At the time he was transported to jail, Bouie had not been arraigned or brought before a magistrate for a preliminary hearing. Sergeant Cox explained that Bouie's processing at the police station on October 25, 2012, had occurred after hours, such that arraignment did not take place until the next day; the grand jury would not return its indictment for another six months. Nonetheless, the circuit court was of the opinion that issuance of the arrest warrant and concomitant extradition in aid thereof were sufficient to initiate adversary judicial proceedings against Bouie, thus implicating his Sixth Amendment right to counsel.

We observe, however, that unilateral, administrative actions taken by the authorities prefatory to formal prosecution are outside the reach of the Sixth Amendment, whose protections apply "only when the government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 430 (1986); *cf. United States v. Alvarado*, 440 F.3d 191, 200 (4th Cir. 2006) ("The filing of a federal criminal complaint does not commence a formal prosecution. Rather, the main reason a law enforcement officer files such a complaint is to establish probable cause for an arrest warrant."). In *Burbine*, the United States Supreme Court recognized that a defendant's custodial interrogation pursuant to an arrest warrant, but prior to arraignment, does not trigger the Sixth Amendment right to counsel. And, in accordance with our opinion in *Williams*, 226 W. Va. 626, 704 S.E.2d 418, Bouie's representation by counsel in connection with a prior

9

offense is immaterial, as that right "cannot be invoked once for all future prosecutions." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

There is, therefore, no basis to conclude that the admissibility of Bouie's statements to Sergeant Cox on the way to jail ought to be scrutinized for constitutional compliance other than with the Fifth Amendment. The circuit court addressed the substance of Bouie's Sixth Amendment contentions, rejecting those arguments on their merits, but the result is the same. *See State v. Coles*, 234 W. Va. 132, ____, 763 S.E.2d 843, 850 n.18 (2014) ("'This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.'" (quoting syl. pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965))).

### 2. Fifth Amendment Privilege Against Self-Incrimination

It is undisputed that Sergeant Cox had not informed Bouie of his Fifth Amendment rights in conformance with *Miranda v. Arizona*, 384 U.S. 436 (1966). Nevertheless, "'the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.'" *Damron v. Haines*, 223 W. Va. 135, 141, 672 S.E.2d 271, 277 (2008) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). The *Miranda*

Court made clear, however, that "interrogation . . . mean[s] questioning *initiated by law enforcement officers* after a person has been taken into custody." 384 U.S. at 444 (emphasis added); *see State v. Kilmer*, 190 W. Va. 617, 625, 439 S.E.2d 881, 889 (1993) (reciting that interrogation has been defined as "'express questioning . . . [or] any words or actions *on the part of the police* . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect'" (quoting *Innis*, 446 U.S. at 301) (emphasis added)).

No view of the facts as presented here could support the notion that Sergeant Cox initiated the conversation that led Bouie to make the incriminating statements admitted against him at trial. With no prompting and in a completely spontaneous manner, Bouie asked Sergeant Cox for a copy of the criminal complaint against him. Sergeant Cox wordlessly complied with the request, having no reason to know or even suspect that doing so would cause Bouie to express confusion regarding the complaint, thereby indirectly admitting his presence on the premises and, in turn, confirming his role in Poindexter's death. *Cf. Guthrie*, 205 W. Va. 326, 343, 518 S.E.2d 83, 100 (1999) (concluding that no interrogation of defendant occurred during transport to police headquarters, in that the record failed to "suggest[] any subtle or overt coercive tactic being used by the police for the purpose of intimidating Mr. Guthrie into talking and incriminating himself"). Absent any indication of the improper police influence

11

described in *Guthrie*, we are likewise compelled to conclude here that Bouie's statements to Sergeant Cox were voluntarily made, and thus properly admitted into evidence.

### B. Payne's Statements to Carey

We now consider the trial appearance of Aaron Carey, whose testimony the prosecution preemptively moved to admit on December 23, 2013. The circuit court granted the motion, whereupon Carey testified that, two days after Poindexter's death, Payne confided having "shot somebody in a robbery." Further, according to Payne as told to Carey, the violent episode was the result of Payne's desire to acquire money and drugs. Payne would neither confirm nor deny Carey's account of their conversation, invoking his Fifth Amendment privilege against self-incrimination and refusing to testify at Bouie's trial. Bouie contends that, in light of Payne's absence, the latter's alleged statements to Carey were admitted in contravention of Bouie's right to confront the witnesses against him. Bouie maintains in the alternative that Carey's hearsay testimony failed to fulfill the standards for admissibility pursuant to Rule 804(b)(3) of the West Virginia Rules of Evidence.

The Confrontation Clause of the Sixth Amendment "bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." Syl. pt. 6, *State v. Mechling*, 219 W. Va. 366, 633 S.E.2d 311 (2006) (citing

12

*Crawford v. Washington*, 541 U.S. 36 (2004)). It is undisputed that Payne rendered himself unavailable by the valid invocation of his Fifth Amendment privilege. *See In re Anthony Ray Mc.*, 200 W. Va. 312, 326, 489 S.E.2d 289, 303 (1997) ("The constitutional question of unavailability is generally answered when a court determines, under the penal interest exception of Rule 804(b)(3), that a declarant has successfully invoked the privilege against self-incrimination."). Moreover, the State does not contend that Bouie had the prior opportunity to cross-examine Payne regarding the statements related by Carey.

Nonetheless, the threshold *Mechling* requirement is absent here, inasmuch as "only testimonial statements cause the declarant to become a witness subject to the constraints of the Confrontation Clause." *Mechling*, 219 W. Va. at 373, 633 S.E.2d at 318 (citation and internal quotation marks omitted). Thus, "[n]on-testimonial statements by an unavailable declarant . . . are not precluded from use." *Id.*; *see State v. Kaufman*, 227 W. Va. 537, 550, 711 S.E.2d 607, 620 (2011). A testimonial statement is one "'that is made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Syl. pt. 8, *Kaufman*, 227 W. Va. 537, 711 S.E.2d 607 (quoting syl. pt. 8, *Mechling*, 219 W. Va. 366, 633 S.E.2d 311).

13

We agree with the circuit court's ruling that Payne's statements were not testimonial, insofar as they were "made in Mr. Carey's living room and during a friendly conversation." No objective witness in Payne's position could have reasonably believed that he was making any statements for purposes of a trial. Under such circumstances, Bouie's asserted Sixth Amendment right to confront and cross-examine Payne is not implicated. Payne's statements therefore needed only to satisfy "a firmly rooted hearsay exception" in order to be properly admitted through Carey. *See* syl. pt. 4, *Kaufman*, 227 W. Va. 537, 711 S.E.2d 607 (citation and internal quotation marks omitted).

The circuit court thus considered the issue within established evidentiary strictures, concluding that Payne's statements were admissible as being against his own penal interest. *See* W. Va. R. Evid. 804(b)(3) (providing generally that statements against interest are excepted from bar on hearsay evidence, and specifically those that "so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true"). The circuit court's analysis followed our established framework for evaluating such statements. *See State v. Mason*, 194 W. Va. 221, 460 S.E.2d 36 (1995), *overruled on other grounds by Mechling*, 219 W. Va. 366, 633 S.E.2d 311. In *Mason*, we instructed:

> To satisfy the admissibility requirements under Rule 804(b)(3) of the West Virginia Rules of Evidence, a trial court must determine: (a) The existence of each separate statement in the narrative; (b) whether each statement was

14

> against the penal interest of the declarant; (c) whether corroborating circumstances exist indicating the trustworthiness of the statement; and (d) whether the declarant is unavailable.

Syl. pt. 8, *id.* Of the four *Mason* criteria, Bouie contests only the third, maintaining that the circumstances surrounding Payne's statements to Carey were insufficiently corroborative to indicate the statements' trustworthiness. In particular, Carey acknowledged at a pretrial hearing that he and Payne had each been smoking marijuana, that he could not remember the precise date of the conversation, and that no one else was present.

As we recalled in *Anthony Ray Mc.*, "the very fact that a statement is 'genuinely self-inculpatory . . . is itself one of the particularized guarantees of trustworthiness.'" 200 W. Va. at 322, 489 S.E.2d at 299 (quoting *Williamson v. United States*, 512 U.S. 594, 605 (1994) (internal citation and quotation omitted)). A declarant's statements that he shot someone in the commission of a crime—and that he did so in part to obtain contraband—are "genuinely inculpatory" under even the most rigorous definition of the term. *See Williamson*, 512 U.S. at 603 (pointing out that a "squarely self-inculpatory confession" such as "yes, I killed X," will ordinarily be admissible in conformance with Rule 804(b)(3)). The circumstances Bouie identifies might call into question the trustworthiness of more equivocal statements, but they do not serve here to torpedo the admissibility of Payne's. Instead, the potential defects in Carey's recollection and the lack of substantiation from other witnesses bear more on the proper assessment of

15

the statements' evidentiary weight, and, indeed, Bouie cross-examined Carey on each point in front of the jury. We therefore conclude that the circuit court did not abuse its discretion in admitting Payne's statements.

### C.  The Phone Call Statements

On September 13, 2013, Bouie moved to suppress the phone call statements he made from the Central Regional Jail, which were recorded by jail authorities. The circuit court denied Bouie's motion in its pretrial order of March 12, 2014. Pursuant to West Virginia Code § 31-20-5e (2002), jails are permitted to "monitor, intercept, record and disclose" non-privileged telephone calls placed or received by inmates, although the statute requires, inter alia, that "[n]otice shall be prominently placed on or immediately near every telephone that may be monitored." *Id.* § 31-20-5e(3).

The circuit court recounted that the jail had implemented procedures to ensure that conforming laminated notices were prominently displayed and remained so, although "no testimony was provided that a notice was up at the exact phone used by [Bouie] at the specific time and date when the calls were made." Notwithstanding the lack of iron-clad certitude, the circuit court found "that notices were prominently displayed during [Bouie's] calls." Moreover, when the phone calls were played at trial for the jury, each was clearly prefaced with an oral warning that the call was subject to monitoring and recordation. It is therefore plain that Bouie was presented with actual

16

notice in advance of making the inculpatory statements that anything he might say on the prison phones would be monitored and recorded. Bouie ignored the warnings at his own peril.

Under exceedingly similar circumstances, we determined in *State v. Blevins*, 231 W. Va. 135, 150, 744 S.E.2d 245, 260 (2013) (per curiam), that the defendant in that case "knew he was being recorded and that no violation of privacy occurred" that might warrant suppression of the statements obtained from the jail phone recordings. Bouie's circumstances are virtually indistinguishable from those in *Blevins*, and the same result will obtain here. The circuit court did not abuse its discretion in admitting the statements.

### D. The Exemplar Shoes

A few days prior to trial, on March 13, 2014, Bouie filed a motion in limine to exclude all evidence pertaining to the exemplar shoes purchased by Sergeant Cox. The circuit court ruled the shoe evidence admissible at a pretrial hearing the following day, and again at trial upon Bouie's renewed motion. The exemplar shoes constituted demonstrative evidence, that is, "an explanatory aid . . . that, while of probative value and usu[ally] offered to clarify testimony, does not play a direct part in the incident in question." Black's Law Dictionary 675 (10th ed. 2014). We have previously observed that "[t]he admission of demonstrative evidence rests largely within the trial court's

17

discretion." Syl. pt. 14, *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995) (upholding circuit court's decision permitting prosecution to have testifying defendant participate in reenactment of charged killings).

With respect to the shoes themselves, it was explained to the jury on several occasions that they did not belong to Bouie. In examining Sergeant Cox, the prosecutor asked, "And to make sure we're very clear, these are not Mr. Bouie's shoes?" Sergeant Cox confirmed that the prosecutor's understanding was accurate. The prosecutor briefly resumed the examination, but redirected his questioning soon thereafter to clarify any lingering doubt concerning the genesis of the exemplar shoes: "Again, I want to reiterate these are not Mr. Bouie's shoes; correct? I mean you did not get these from Mr. Bouie?" Sergeant Cox responded, "That is correct." At that moment, the circuit court elected to give the jury a cautionary instruction:

> [T]he exemplar shoes utilized by the prosecution during the trial are not actual evidence recovered from the crime scene, nor obtained from either of the defendants charged in this matter. These shoes were merely purchased by the State as a demonstrative aid based solely upon the investigation of Sgt. Josh Cox. They are not Mr. Bouie's shoes. They are not Mr. Payne's shoes, nor do they belong to any of the witnesses. You are instructed that you may consider these [e]xemplar shoes only as a demonstrative aid used by the State in furtherance of its theory of the case, and may lend them no greater weight than that in your deliberations.

18

The point was made at least twice more, as both FBI experts questioned concerning the exemplar shoes were careful to mention that they had examined no shoes obtained from Bouie.

Bouie's allegation of error with respect to the exemplar shoes focuses not so much on their admission per se, but rather on Sergeant Cox's testimony concerning the shoes. The circuit court permitted Sergeant Cox to offer his lay opinions that the exemplar shoes were similar in color and design to the shoes worn by Bouie in the surveillance videos, and that the outsole pattern exhibited on the exemplar shoes was similar to the footwear impressions left beneath Poindexter's bedroom window.

The evidence was admitted pursuant to West Virginia Rule of Evidence 701, which provides that lay "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." We have explained that

> [i]n order for a lay witness to give opinion testimony pursuant to Rule 701 of the West Virginia Rules of Evidence (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.

19

Syl. pt. 9, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) (citation and internal quotation marks omitted). Furthermore, "'[t]he determination of whether a witness has sufficient knowledge of the material in question so as to be qualified to give his opinion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly erroneous.'" *Id.*, 234 W. Va. at ____, 764 S.E.2d at 325 (quoting syl. pt. 4, *Cox v. Galigher Motor Sales Co.,* 158 W. Va. 685, 213 S.E.2d 475 (1975)).

Here, Sergeant Cox plainly possessed the personal knowledge or perception of the underlying facts required by Rule 701, in that, as lead investigator of the case, he had carefully examined the exemplar shoes, the surveillance videos, and the footwear impressions. His opinion that the exemplar shoes exhibited certain properties similar to those displayed in the videos and by the footwear impressions was indisputably rational, in that the FBI experts testified to the same thing. The experts could not make the prosecution's desired final connections and say with any certainty that the sneakers Bouie wore on the night in question were Nike Air Force Ones or that the brand left the footwear impressions, and, significantly, Sergeant Cox was not permitted to testify to those connections, either.

Even so circumscribed, Sergeant Cox's opinion testimony was helpful to the jury. The surveillance videos made apparent that, on the cold January morning of

Poindexter's death, Bouie was the only one of the five men who arrived at the apartment complex wearing sneakers. It was also evident that one set of the footprint impressions beneath Poindexter's bedroom window had been made by sneakers. It doubtlessly aided the jury's understanding of the case to hear that Sergeant Cox had taken note of those salient facts and examined their potential significance, else it might presume that his investigation had been incomplete or—worse—that the police or prosecutor had concealed exculpatory information. Under the circumstances, we cannot say that the circuit court abused its discretion in admitting either the exemplar shoes or Sergeant Cox's opinion testimony.

### E. Sufficiency of the Evidence

In evaluating the strength of the prosecution's case at trial, we begin by noting that the involvement of alleged co-conspirator Payne in Poindexter's death appears manifest. The surveillance videos revealed that Payne had been wearing a baseball cap prior to the murder, but not afterward. A baseball cap discovered near the crime scene was tested and found to contain DNA consistent with Payne's. A search of Payne's living quarters turned up an ammunition magazine with four .25 caliber rounds; forensic analysis revealed that at least one of the loaded rounds had once been extracted by the same weapon that expelled the .25 caliber shell casing retrieved from the scene. During that same search, the police seized a pair of boots that matched one set of the footwear impressions found beneath Poindexter's window.

21

To convict Bouie of felony murder, the prosecution was required to prove not only that Poindexter was unlawfully killed, but also that Count One of the indictment accurately alleged that Payne committed the murder in furtherance of the attempted burglary of Poindexter's residence. *See* W. Va. Code § 61-2-1 (1991) (defining first-degree murder as, among other things, being murder "in the commission of, or attempt to commit . . . burglary"); *id.* § 61-3-11 (1993) (providing that a person who "in the nighttime, break[s] and enter[s] . . . the dwelling house . . . of another, with intent to commit a crime therein . . . shall be deemed guilty of burglary"). In order to convict Bouie of the conspiracy to commit burglary as alleged in Count Two, the prosecution was charged with "'show[ing] that [he] agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy.'" Syl. pt. 3, *State v. Stevens*, 190 W. Va. 77, 436 S.E.2d 312 (1993) (quoting syl. pt. 6, *State v. Johnson*, 179 W. Va. 619, 371 S.E.2d 340 (1988) (internal citation omitted)).

Bouie contends that the prosecution inadequately proved the existence of an agreement between Payne and Bouie. Alternatively, Bouie maintains that the evidence was insufficient to establish burglary as the object of any such agreement. If Bouie is correct in either assertion, it is likely the case that the evidence was also insufficient for the jury to find that Payne and Bouie advanced beyond mere conspiracy and attempted in

22

fact to burglarize Poindexter's residence. If so, Bouie's murder conviction would have to be reversed for the prosecution's failure to prove the predicate felony. In mounting his attack on the sufficiency of the evidence, Bouie faces an uphill climb:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. pt. 3, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163.


Lacking any witness who could testify concerning communications between Bouie and Payne, the prosecution was obliged to demonstrate their agreement by resort to circumstantial evidence. The requisite level of certainty as to an agreement of any sort could be established by showing that both men were present when—as the physical evidence suggested—one of them began to cut the screen out of Poindexter's window to gain access to the apartment. That the object of the agreement was burglary (and not merely, for instance, destruction of property) could be confidently ascertained by proof there was likely something in the apartment worth stealing. If the prosecution could produce credible evidence of presence and motive, then the jury would be entitled

23

to rule out all legitimate reasons for Bouie being in the vicinity of Poindexter's apartment after 3:00 a.m., and find him guilty as charged beyond a reasonable doubt.

Motive was sufficiently proved in this instance. The evidence disclosed that the police found a distributable quantity of cocaine, packaged for individual sale, inside Poindexter's apartment. Detectives also discovered $1,344 cash in a pair of Poindexter's pants at the foot of his bed. The prosecution established that the window screen had been breached on the night in question; a reasonable jury could therefore find that Payne had cut or torn the screen attempting to enter the apartment, rather than the far less likely scenario that Poindexter had damaged his own abode attempting to exit through a window instead of a door. Moreover, once the jury found that Payne had breached the window, it could further reasonably find beyond a reasonable doubt that Payne had done so in an attempt to burglarize the apartment by stealing the drugs and money inside. Indeed, Carey corroborated the prosecution's theory of the case, testifying that, shortly after Poindexter's murder, Payne admitted having shot somebody in pursuit of money and drugs. Finally, and of no small moment, during the cross-examination of Sergeant Cox, defense counsel sought acknowledgment that "[c]lear evidence throughout the case indicates that Mr. Poindexter was engaged in the business of selling [controlled] substances; correct?" Sergeant Cox readily agreed.

24

The evidence of Bouie's presence alongside Payne at the crime scene was nearly as compelling. In Sergeant Cox's cruiser, Bouie asserted that "he was not the shooter," thereby strongly intimating first-hand knowledge of the events at Poindexter's apartment. Bouie admitted having walked around the residence, and in doing so placed himself in the physical vicinity of the murder. Bouie's phone conversations from jail referencing "E" and "E.C." further demonstrated his association with Payne, and his purported knowledge concerning the evidence that was likely to be found during the investigation was essentially an admission of involvement. Eyewitness testimony from the men who accompanied Bouie and Payne to the apartment complex established that Bouie and Payne strode off in each other's company and returned the same way. Lastly, Bouie's unique choice of footwear that cold night, viewed in conjunction with the sneaker impressions discovered at the crime scene merely underscores the strength of the case presented by the prosecution.[3]

---

[3] It bears mention that, even had we concluded *supra* that the circuit court erred in admitting Sergeant Cox's lay opinion testimony relating to the exemplar shoes, such error would have been harmless in light of the other compelling evidence of guilt that we have recited immediately above. *See McKinley*, 234 W. Va. at ____, 764 S.E.2d at 321 ("'A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby.'") (quoting syl. pt. 7, *Torrence v. Kusminsky*, 185 W. Va. 734, 408 S.E.2d 684 (1991)). Moreover, Sergeant Cox was thoroughly and competently cross-examined as to his opinions, minimizing any potential unfair prejudice allegedly arising therefrom.

We are therefore convinced that any rational trier of fact could have found Bouie guilty beyond a reasonable doubt of both charges against him. Inasmuch as Bouie is unable to meet his "heavy burden" of convincing us that the evidence at trial was insufficient, we must affirm his convictions.

## IV.  CONCLUSION

Pursuant to the foregoing, we affirm Bouie's convictions as set forth in the circuit court's judgment of May 19, 2014.

Affirmed.